THE STATE OF OHIO, APPELLEE, *v.* BARROW, APPELLANT.

[Cite as State v. Barrow (1978), 60 Ohio App. 2d 335.]

(No. C-77563—Decided October 11, 1978.)

*Mr. Simon L. Leis, Jr.,* prosecuting attorney, *Mr. William E. Breyer* and *Ms. Mary Jo Brueggeman,* for appellee.

*Messrs. Latimer & Swing, Mr. Albert J. Mestemaker* and *Mr. Robert R. Hastings, Jr.,* for appellant.

*Per Curiam.* This cause came on to be heard upon the appeal, the transcript of the docket, journal entries and original papers from the Court of Common Pleas of Hamilton County, and the briefs and the arguments of counsel.

Shortly after midnight on February 10, 1977, as two plainclothed Cincinnati police officers were searching for stolen cars in an unmarked vehicle through a known "dumping area" for stolen automobiles, they observed appellant seated behind the steering wheel of an auto stopped in a parking lot. Outside the car several individuals were talking to each other and to appellant, and, as they drove slowly by, one of the officers heard one of the group exclaim, "[t]hat is the cops." About twenty seconds later appellant pulled out of the lot at a normal rate of speed and turned in a direction opposite to that in which the officers were traveling. Although appellant had not been observed to violate any traffic laws, and although the officers were not specifically looking for the car driven by appellant, the policemen changed their course in pursuit of him. Appellant was driving a late-model Oldsmobile bearing Indiana license plates, and the officers radioed their request for a license check to see if the car was

stolen. Upon being told that this information was unavailable at the time, the officers asked that a uniformed policeman in a marked car stop appellant's vehicle so that they could further investigate it. This stop was subsequently accomplished with appellant offering no resistance. Appellant was ordered to alight from his car, and only as he did so did officers beside him note a revolver lying on the seat in a spot which previously had been covered by appellant's right leg.

Appellant was indicted for carrying a concealed weapon, a violation of R. C. 2923.12. Pleading not guilty, the appellant moved to suppress evidence of the weapon. This motion was overruled, and appellant thereafter waived a trial by jury, was found guilty as charged, and was sentenced as appears of record. An appeal was timely filed, with two assignments of error presented for review.

Appellant first argues that the trial court erred to his prejudice in overruling his motion to suppress evidence of the revolver, asserting that the weapon was seized in violation of the Fourth Amendment to the United States Constitution and of Section 14, Article I, Constitution of Ohio. We agree.

The state concedes that the police officers did not have probable cause either to arrest appellant or to search his automobile when they initially approached it. It contends, nevertheless, that the officers were reasonably suspicious that criminal activity was afoot, and, therefore, under *Terry* v. *Ohio* (1967), 392 U. S. 1, they were entitled to stop and question appellant and, as they were thus lawfully in the position from which they observed the weapon, the plain view exception was applicable enabling them to seize it without a warrant. However, in order to justify the sort of intrusion which occurred here, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry, supra,* at 21.

In the instant case, the facts as related above were adduced at the hearing to suppress as the requisite "specific and articulable facts." However, it must be noted that appellant was not observed violating any traffic or other laws and that the officers were not specifically looking for either the appellant or the auto he was driving. On balance, we find the above-listed events, circumstantially innocuous in

themselves, to be too skeletal and ambiguous to create any reasonable suspicion that appellant was engaged in or about to engage in criminal activity. *Cf. United States* v. *Cupps* (C.A. 6, 1974), 503 F. 2d 277; *United States* v. *Montgomery* (C.A.D.C. 1977), 561 F. 2d 875; *State* v. *Grady,* unreported, First Appellate District, No. C-74158, decided February 18, 1976. Inarticulate hunches, formulated in good faith though they may be, cannot support the reasonable suspicion *Terry, supra,* requires, and the officers' investigative stop of appellant was therefore not constitutionally permissible. *See Cupps, supra,* and *Montgomery, supra.* It follows, then, that the plain view exception was inoperable because the officers were not in a place where they had a right to be when they spied appellant's revolver, and evidence as to the weapon's existence should not have been admitted.

The state would furthir justify the instant stop as being authorized by R. C. 4507.35, which reads in pertinent part: "[t]he operator***of a motor vehicle shall display his license***upon demand of any peace officer***."[1] Although this statute has been cited to allow police to stop motorists on a systematic basis, at regular check points or as part of a truly random selection for the purpose of enforcing motor vehicle laws,[2] this asserted general inspection power may not be used as a pretext for investigating appellant's "suspicious" conduct where, as here, officers admitted that the purpose for the stop was unrelated to the enforcement of the traffic code. *Montgomery, supra,* and *Cupps, supra.* For these reasons, we hold that appellant's first assignment of error is well taken and is therefore sustained.

In his second assignment of error, appellant asserts that the judgment of the trial court was manifestly against the weight of the evidence and contrary to law, in that the state failed to prove that the weapon was concealed and, if it did prove concealment, that appellant established an affirmative defense under R. C. 2923.12 (C) (2). While this argument is perhaps mooted by our disposition of the first assignment of error, we conclude, in conformity with App. R.12(A), that a

---

[1] The trial court relied on R. C. 4507.35 in overruling appellant's motion to suppress evidence of the weapon.

[2] *Cf. Cuyahoga Falls* v. *Church* (1967), 10 Ohio App. 2d 9.

review of the record reveals sufficient probative evidence which, if believed by the court as trier of fact (which it obviously was here), could prove beyond a reasonable doubt that appellant was guilty of carrying a concealed weapon and that he failed to establish an affirmative defense to that charge.[3] Appellant's second assignment of error is accordingly overruled.

In light of our disposition of the first assignment of error, the judgment is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed.*

PALMER, P. J., KEEFE and CASTLE, J J., concur.

---

[3] The trial court expressly found appellant's testimony as to the affirmative defense to be incredible.