The STATE of Ohio, Appellee,

v.

WARD, Appellant.

[Cite as *State v. Ward* (1992), 80 Ohio App.3d 701.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 60068.

Decided July 20, 1992.

*Stephanie Tubbs Jones*, Cuyahoga County Prosecuting Attorney, and *Thomas A. Rein*, Assistant Prosecuting Attorney, for appellee.

*Stuart A. Saferin*, for appellant.

SPELLACY, Presiding Judge.

On November 1, 1989, at approximately 12:10 a.m., Detectives Bienvenido Santiago, James Kennelly, and Robert Preston, all from the Cleveland Police Department's Vice Unit, were patrolling the "high crime area" of East 36th Street and Euclid Avenue in the city of Cleveland, Ohio. During their patrol, the detectives observed a female flagging down passing automobiles and speaking to the men inside the vehicles. Suspecting that the female was engaging in prostitution, the detectives pulled up next to her and told her to go home. She agreed and left the area.

About ten to fifteen minutes later, the detectives observed the same female engaged in the same activity. Once again, they approached the female, but this time they arrested her for disorderly conduct. Upon the female's arrest, she asked the detectives to drive by her boyfriend, who was sitting in a nearby parked car. The detectives complied and drove to the parked car located in an adjacent parking lot.

Detectives Santiago and Kennelly exited the police car and approached the parked car. As they walked toward the car, they observed the defendant-appellant William Ward ("appellant") behind the driver's wheel, making a motion with his right hand. It appeared to the detectives that appellant was attempting to hide something between the front seats.

Suspecting that appellant may have been hiding a gun or drugs, Detective Santiago instructed appellant to exit the car with his hands straight up in the air. While appellant had his hands on the top of the car, Detective Santiago shone his flashlight into the car and saw, in plain view, a "straight shooter" cocaine pipe sticking out of the seat. Detective Santiago retrieved the pipe and appellant was arrested. It was later determined that the pipe contained cocaine residue.

On February 6, 1990, appellant was indicted by the Cuyahoga County Grand Jury for one count of possession of cocaine, in violation of R.C. 2925.11, and one count of possession of criminal tools, in violation of R.C. 2923.24. At his arraignment on March 7, 1990, appellant pleaded not guilty.

On April 30, 1990, appellant filed a motion to suppress, and on May 4, 1990, the trial court conducted a hearing on appellant's motion. After hearing all the evidence and oral arguments, the trial court denied appellant's motion to suppress.

On the same day, appellant retracted his not guilty plea and entered a plea of no contest. Appellant was then found guilty of both counts. The trial court subsequently sentenced appellant to a term of one and one-half years on

each count. Appellant's sentence was suspended, and he was placed on two years' probation.

Appellant filed a timely notice of appeal and subsequently raised the following assignment of error:

"The trial court erred in allowing the use of evidence which was seized without a warrant and without any exception to the warrant requirement in violation of the Ohio Constitution and the United States Constitution."

The issue in the instant case is whether the investigative stop of appellant and subsequent seizure of the cocaine pipe were proper.

■ "The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances." *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus.

■ In this case, the area in question was a "high crime area," and the detectives were patrolling said area at a very late hour. Upon the request of appellant's girlfriend, who had just been arrested, the detectives drove to appellant's parked car. The detectives saw appellant make furtive movements as if he was hiding a gun or drugs. There was evidence that the detectives were very experienced in investigating criminal activity in this "high crime area," and they exhibited suspicions that appellant was involved in criminal activity.

We find that the totality of the circumstances does cumulate into an articulable suspicion that justified an investigative stop of appellant. Accordingly, we conclude that the detectives properly removed appellant from the car and had him place his hands on top of the car.

We further conclude that, under the circumstances, the cocaine pipe was properly confiscated, since it was in plain view of the detectives while they conducted a lawful investigative stop of appellant.

For the foregoing reasons, we determine that the trial court did not err in denying appellant's motion to suppress.

The trial court judgment is affirmed.

*Judgment affirmed.*

KRUPANSKY, J., concurs.

HARPER, J., dissents.

HARPER, Judge, dissenting.

I respectfully dissent from the majority opinion. The liberal interpretation this court consistently gives the Ohio Supreme Court's decision in *State v.*

*Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, is becoming an affront to the United States constitutional protection against unreasonable searches and seizures and makes it a prime candidate for a revisit.

Appellant argues that since the officers had no reason to believe that he was in the process of committing any crime, the evidence seized in his illegal arrest should have been suppressed. I agree. As at this writing, the law in *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, is still good law. In order to conduct a legal investigatory stop, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." The courts have consistently held that *Terry* calls for a review of the totality of the circumstances in each particular case to determine if the investigatory stop is justifiable. *United States v. Cortez* (1981), 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621; *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489; *State v. Freeman* (1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044; see, also, *State v. Williams* (1990), 51 Ohio St.3d 58, 554 N.E.2d 108.

Thus, in the case *sub judice*, we look to the conduct of the officers to determine if the initial stop was justified within the context of *Terry, supra.* Officer Santiago and the other two officers all testified that they went to appellant's car at the request of his girlfriend. Appellant was not observed committing any crime that the officers can attest to. Officer Santiago testified that appellant was ordered out of the car only because he made a "furtive gesture." When he was ordered out of the car and patted for weapons, the police found none; however, they proceeded to search the car. The officers' reason for looking in the car was not for a possibility of finding a weapon but to look for contraband. As Officer Santiago testified, "we really wasn't [*sic*] looking for a gun."

The Ohio Supreme Court held in *Bobo, supra,* that "a mere furtive gesture, standing alone, does not create probable cause to stop and search a vehicle without a warrant." See, also, *State v. Jackson* (1989), 52 Ohio App.3d 39, 556 N.E.2d 223. The state, in an attempt to justify the stop, argues as follows:

"Appellant's brief cites several cases in which the facts are quite different from the instant case. Appellant's case citations involve cases where the only reason for the stop and search was because the defendants had made furtive gestures, or were in high drug areas, or had been previously arrested, or the officers did not search for weapons. In the instant case, there are specific and articulable facts justifying the search including: (1) the location of the incident was an area of high drug, weapon, and crime activity; (2) the detectives were familiar with that area; (3) the detectives were experienced,

having made numerous arrests where they confiscated drugs and weapons, including in that particular area; (4) the incident occurred late at night; (5) the detectives had already made one arrest relating to this incident; (6) the vehicle in which the appellant was seated belonged to that person arrested; (7) the detectives were away from the protection of their police vehicle; (8) the arrested person was associated with the appellant and asked to be taken over to the appellant; (9) the appellant was attempting to hide something; and (10) the officers acted for their own protection."

The state's argument is unpersuasive. The officers' experience in arresting individuals in a high crime area within the confines of this case is insufficient to warrant an illegal intrusion. See *State v. Fincher* (1991), 76 Ohio App.3d 721, 603 N.E.2d 329; *State v. Hewston* (Aug. 2, 1990), Cuyahoga App. No. 59095, unreported, 1990 WL 109183. The officers' arrest of appellant's friend or the ownership of the vehicle creates neither probable cause to believe that he too is a criminal or about to commit a crime, nor a proper basis for an investigatory stop pursuant to either *Terry* or *Bobo*. The officers could not have "acted for their own protection" as claimed by the state, when Officer Santiago testified that "we really wasn't [*sic*] looking for a gun."

Assuming *arguendo* that appellant's behavior could be characterized as suspicious, *Terry* and *Bobo* held that the officer's conduct must not be based on inarticulable hunches. See, also, *State v. Barrow* (1978), 60 Ohio App.2d 335, 14 O.O.3d 295, 397 N.E.2d 422. He must have a reasonable suspicion that criminal activity is imminent and must be able to state specific facts to justify the conclusion that defendant is engaged in criminal activity. *Fincher, supra,* citing *Terry* and *Bobo*. The state has not shown any legal justification for the stop.

The majority states:

"We find that the totality of the circumstances does cumulate into an articulable suspicion that justified an investigative stop of appellant. Accordingly, we conclude that the detectives properly removed appellant from the car and had him place his hands on top of the car."

I will not shy away from stating what the majority is afraid to state in print. The majority of this court today, as has been the recent trend in this court, is actually holding that, as a matter of law, those unfortunate black, Hispanic and poor white citizens who by virtue of their economic and social status live in the so-called "high crime areas" are suspects. See *State v. Smith* (Aug. 29, 1991), Cuyahoga App. No. 58918, unreported, 1991 WL 185720; see, also, *State v. Davis* (Nov. 7, 1991), Cuyahoga App. No. 61108, unreported, 1991 WL 232140. The law makes them suspects who should be

seized and searched just because a police officer who happens to have a couple of years' experience in the force says so. Any law that boldly condemns its citizens and renders them less than other citizens for purposes of constitutional protection based on their economic and social standing in that community is a bad law and has no place in a constitutional democracy. This court is consistently giving *Bobo* such an interpretation and it makes me very uncomfortable for the sake of law-abiding citizens who are subjected daily to such illegal intrusions because of who they are and where they live.

While the record does not state that the trial court's decision was based on a plain view doctrine, I hold, however, that it is erroneous to allow the use of evidence found in an improper investigatory stop even when found in plain view. *State v. Chandler* (1989), 54 Ohio App.3d 92, 560 N.E.2d 832.

"Objects seized in the search of an individual made prior to his arrest by officers * * * who are without apprehension of possible harm, a belief the individual is armed, or a suspicion [a] crime has been committed, are not admissible in evidence." *State v. Kratzer* (1972), 33 Ohio App.2d 167, 62 O.O.2d 257, 293 N.E.2d 104, syllabus.

I borrow from our decision in *State v. Linson* (1988), 51 Ohio App.3d 49, 50, 554 N.E.2d 146, 148:

"Since the search in this case was irrelevant to the protection of the police officers who performed it, it was not appropriate under either *Terry* or *Bobo, supra.*"

This court's ever-expanding interpretation of the *Bobo* decision to justify searches and seizures not based on articulable facts but on inarticulable hunches, brought about by the individual defendant's geographical location, renders the *Bobo* case incapable of being used to serve the ends of justice. Accordingly, I dissent.