The STATE of Ohio, Appellee,

v.

VENHAM, Appellant.

[Cite as *State v. Venham* (1994), 96 Ohio App.3d 649.]

Court of Appeals of Ohio,
Washington County.

No. 93 CA 28.

Decided Sept. 8, 1994.

*Robert J. Smith,* Marietta City Assistant Law Director, for appellee.

*Teresa D. Schnittke,* Assistant Washington County Public Defender, for appellant.

PETER B. ABELE, Judge.

This is an appeal from a judgment of conviction and sentence entered by the Marietta Municipal Court finding Tony D. Venham, defendant below and appellant herein, guilty of driving while under suspension, in violation of R.C. 4507.02(B).

Appellant assigns the following error:

"The trial court committed reversible error when it failed to grant the defendant's motion to suppress, filed April 22, 1993."

On March 31, 1993, at approximately 1:30 p.m., Washington County Sheriff's Detective James Moon was aiding Detective Shuck in a search for an individual named Stacey R. Ellison, for whom a northern Ohio county had issued an active arrest warrant. At the sheriff's office, Moon had seen a facsimile of Ellison's photograph and a physical description. The detectives drove to an apartment complex at Dodd Circle in Marietta, Ohio in response to a tip that Ellison was there. After inquiry, the detectives learned that Ellison had left the apartment with appellant and several other individuals.

Detective Schuck left the apartment and then began to look for the car described by the residents. Detective Moon remained in the apartment complex in case Ellison returned. As Moon was waiting near Chisler Drive, the described car passed him. In its judgment entry, the trial court outlined the facts as follows:

"Deputy Moon later saw Mr. Venham's car. When he first saw it, he saw two people in the front seat and one head 'pop up' in the back seat. He activated the lights and siren on his patrol car. The car appearing to be Mr. Venham's was stopped. He called for a back-up unit. He then removed the passenger in the front car seat from the car, followed by the passenger in the back seat, and finally the driver, who is the Defendant in this case. The occupants of the automobile told the Deputy that they had dropped Mr. Ellison off prior to being stopped. Mr. Ellison, the person wanted on the warrant, was not with them. Mr. Venham produced the license. Deputy Moon had the dispatcher run a computer check to determine if the license was valid. The computer indicated that the Defendant had no operator's license, which the Defendant confirmed. Deputy Moon charged the Defendant with operating under a FRA suspension in violation of Section 4507.02(A)."

Moon established that the individuals in the car were appellant, Ellison's

brother and Ellison's brother-in-law.[1]

Appellant filed a motion to suppress evidence, asserting that Deputy Moon did not have a legitimate basis to ask appellant for his license and to run a license record check. At the hearing on the motion to suppress, Detective Moon testified that he did not personally know appellant but that he had seen him around town. Moon recognized, upon appellant's exit from the car, that appellant was not Ellison.

The trial court overruled appellant's motion to suppress evidence. Subsequently, appellant entered a no contest plea and the court found appellant guilty as charged. Appellant filed a timely notice of appeal.

I

In his sole assignment of error, appellant asserts that the trial court erred by overruling his motion to suppress evidence. In particular, appellant contends that because Detective Moon determined that appellant was not Ellison, and because Moon established that Ellison was not in the car, Moon did not have a reasonable and articulable suspicion to demand that appellant produce his operator's license and to perform a computer check of appellant's license. We note that appellant does not contest the validity of the initial investigatory stop.

In a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses. *State v. Lewis* (1992), 78 Ohio App.3d 518, 605 N.E.2d 451; *State v. Warren* (Aug. 12, 1991), Hocking App. No. 90CA7, unreported, 1991 WL 156521. Thus, the credibility of witnesses at a hearing on a motion to suppress evidence is a matter for the trial court. A reviewing court should not disturb the trial court's findings on the issue of credibility. *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583; *State v. Tutt* (Apr. 14, 1986), Warren App. No. CA85–09–056, unreported, 1986 WL 4506. Accordingly, in our review we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the appropriate legal standard. *State v. Shelpman* (May 23, 1991), Ross App. No. 1632, unreported, 1991 WL 87312; *State v. Simmons* (Aug. 31, 1990), Washington App. No. 89CA18, unreported, 1990 WL 127065.

---

1. At a subsequent hearing, Moon testified that the three individuals were appellant and Ellison's two brothers.

In the case *sub judice*, the trial court concluded that Detective Moon reasonably obtained identification from all of the occupants of the vehicle. We disagree with the trial court.

■ The Fourth and Fourteenth Amendments to the United States Constitution as well as Section 14, Article I of the Ohio Constitution prohibit any governmental search or seizure, including a brief investigative stop, unless supported by an objective justification. *Terry v. Ohio* (1968), 392 U.S. 1, 19, 88 S.Ct. 1868, 1878–1879, 20 L.Ed.2d 889, 904–905; *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271, 1272. In order to warrant a brief investigatory stop pursuant to *Terry*, the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. *State v. Williams* (1990), 51 Ohio St.3d 58, 60, 554 N.E.2d 108, 111. The propriety of an investigative stop by a police officer must be viewed in light of the totality of the circumstances. *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus.

In *State v. Finley* (June 16, 1988), Ross App. No. 1382, unreported, 1988 WL 65637, we wrote:

"In *Prouse (Delaware v. Prouse* (1979), 440 U.S. 648), supra at 663 [99 S.Ct. 1391, 1401, 59 L.Ed.2d 660, 673], the Supreme Court of the United States held that random stops of motor vehicles are violative of Fourth Amendment protections ' * * * except in those situations in which there is at least *articulable and reasonable suspicion* that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law * * * ' (emphasis added). In Ohio, an investigatory stop of a motor vehicle is permissible when specific articulable facts exist to justify a reasonable suspicion that the driver violated the law. *State v. Chatton* (1984), 11 Ohio St.3d 59 [11 OBR 250, 463 N.E.2d 1237]; *State v. Kilbarger* (Oct. 17, 1984), Hocking App. No. 404 [1984 WL 5670]; *State v. Cunningham* (Nov. 24, 1986), Ross App. No. 1255 [1986 WL 13419]." (Footnote omitted.)

In the instant case, we note that appellant does not contest the validity of the initial investigatory stop. Appellant contends, however, that Detective Moon improperly detained appellant and requested to see appellant's license after he learned that Ellison was not in the vehicle. Appellant asserts that once Detective Moon recognized that appellant was not Ellison, there was no legitimate reason to detain appellant. Thus, the issue we must address in the case *sub judice* is whether Detective Moon properly detained appellant after Moon learned that Ellison was not in the vehicle and Moon's initial suspicion which formed the basis of the investigatory stop had been dispelled.

■ We note that the scope and duration of the investigative stop must be limited to effectuate the purpose for which the initial stop was made. In *State v. Berry* (Dec. 1, 1993), Washington App. No. 93CA17, unreported, 1993 WL 524964, we wrote:

"The scope and duration of the investigative stop must last no longer than is necessary to effectuate the purpose for which the initial stop was made. *United States v. Brignoni–Ponce* (1975), 422 U.S. 873 [95 S.Ct. 2574, 45 L.Ed.2d 607]; *State v. Chatton* (1984), 11 Ohio St.3d 59, 63 [11 OBR 250, 253–254, 463 N.E.2d 1237, 1240–1241]; *State v. Bevan* (1992), 80 Ohio App.3d 126, 129 [608 N.E.2d 1099, 1101]. If circumstances attending an otherwise proper stop should give rise to a reasonable suspicion of some other illegal activity, different from the suspected illegal activity that triggered the stop, then the vehicle and the driver may be detained for as long as that new articulable and reasonable suspicion continues. Under these conditions, the continued detention is lawful, even if the officer is satisfied that the suspicion which initially justified the stop has dissipated. *State v. Myers* (1990), 63 Ohio App.3d 765, 771 [580 N.E.2d 61, 65]. However, the lawfulness of the initial stop will not support a 'fishing expedition' for evidence of another crime. *Bevan, supra* [80 Ohio App.3d], at 130 [608 N.E.2d at 1101–1102]; see, also, *State v. Inabnitt* (1991), 76 Ohio App.3d 586, 590 [602 N.E.2d 740, 742–743]."

In *State v. Krum* (Sept. 1, 1993), Montgomery App. No. 13668, unreported, at 9–15, 1993 WL 333648, the court wrote:

"Though an initial stop may, as in this case, have been justified, once an officer's initial suspicion has been dispelled, he may continue to detain an individual to pursue some ancillary matter only if that matter is also supported by a reasonable suspicion that some criminal activity is afoot. * * * Reasonable suspicion that the detainee is engaged in criminal activity must exist for as long as the detention does. The lawfulness of the initial stop will not support a 'fishing expedition' for evidence of crime. *State v. Bevan* (1992), 80 Ohio App.3d 126, 130, 608 N.E.2d 1099 [1101]. See also *State v. Inabnitt* (1991), 76 Ohio App.3d 586, 590, 602 N.E.2d 740 [742–743]; *State v. Hart* (1988), 61 Ohio App.3d 37, 41, 572 N.E.2d 141 [144]; *State v. Sharp* [ (Oct. 2, 1986), Montgomery App. No. 9630, unreported], *supra,* at 5 [1986 WL 1113]; *Fairborn v. Orrick* (1988), 49 Ohio App.3d 94, 96, 550 N.E.2d 488 [490]. * * *

" * * * Just as an initially lawful detention may not be continued to investigate other matters not supported by reasonable suspicion, the scope of a lawful detention may not be expanded, nor the period of the detention prolonged, to embrace an investigation that is not supported by a reasonable suspicion of criminal activity.

" * * *

" * * * To the extent that the appellant's detention was prolonged and the trooper's investigation expanded beyond what was necessary to effectuate the purposes of the stop—to determine that the appellant had committed a lane violation and to cite or warn him for it—it must be supported by a reasonable suspicion that he was engaged in some other criminal activity.

" * * *

"Police have inherent authority to follow certain investigative procedures as a matter of course following a lawful traffic stop if the officer's suspicions of criminal activity have not been dispelled. Among these are a request to see a motorist's driver's license, registration, or vehicle identification number (VIN). *New York v. Class* (1985), 475 U.S. 106, 115 [106 S.Ct. 960, 966, 89 L.Ed.2d 81, 91]. However, if the suspicions that triggered the initial stop are dispelled and there has been no violation of the law, then the officer has no authority to demand the driver's license, registration papers, or to check the VIN. See *State v. Chatton* (1984), 11 Ohio St.3d 59, 63, 463 N.E.2d 1237 [1240]; *Fairborn v. Orrick, supra* [49 Ohio App.3d], at 95 [550 N.E.2d at 489–490]; *State v. Frye* (1985), 21 Ohio App.3d 133 [21 OBR 141], 487 N.E.2d 580; *State v. Keathley* [ (1988), 55 Ohio App.3d 130], at 131–32 [562 N.E.2d 932, 933–934]."

▇▇▇ Thus, if a suspect's detention is prolonged and the investigation expanded beyond the scope necessary to effectuate the purpose of the initial stop, the detention must be supported by a reasonable suspicion that the suspect was engaged in some other criminal activity. If a police officer has no reasonable and articulable suspicion that a motorist is unlicensed, a vehicle is unregistered, or that the vehicle or an occupant is otherwise subject to seizure for violation of the law, the officer cannot detain the driver in order to check his operator's license. See *State v. Chatton* (1984), 11 Ohio St.3d 59, 11 OBR 250, 463 N.E.2d 1237, citing *Delaware v. Prouse* (1979), 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660; *State v. Vance* (1991), 72 Ohio App.3d 589, 595 N.E.2d 528. If, after talking to a driver, a reasonable police officer would be satisfied that there had been no unlawful activity, the driver must be permitted to continue on his way. *State v. Myers* (1990), 63 Ohio App.3d 765, 580 N.E.2d 61.

▇▇▇ In the case *sub judice*, Detective Moon lawfully stopped appellant's vehicle and removed appellant and the two passengers from the vehicle based on Moon's reasonable suspicion that a wanted felon, Ellison, was in the car. However, when appellant and his passengers exited the vehicle, they informed Detective Moon that they had dropped Ellison off at an earlier time. Ellison was no longer in the car. Moon testified that he recognized appellant as not being Ellison as soon as appellant exited the car. Moon stated that he did not observe appellant commit any traffic violations. Additionally, after observing the car's

occupants, Moon knew that none of the occupants fit Ellison's description. In its judgment entry the trial court wrote:

"Deputy Moon did not know the occupants of the vehicle, nor did he know Mr. Ellison. He had a general description of Mr. Ellison from the information on the warrant. The Deputy had a description of Mr. Venham's automobile. Based on that information, and the fact that he had reason to believe that Mr. Ellison was an occupant of the vehicle, Deputy Moon had probable cause to stop the vehicle to investigate to determine if Mr. Ellison was in the vehicle. Once he removed the occupants of the vehicle, he was told by the occupants that Mr. Ellison was not with them. He knew this information was accurate based on the general information about Mr. Ellison contained in the warrant coupled with the telefaxed photograph he had seen earlier. Ohio Revised Code Section 4507.35 authorizes an officer to ask the driver of an automobile to display his driver's license on the demand of an officer."

We believe that because the suspicion that triggered the initial stop had been dispelled and because there was no additional basis to continue appellant's detention, Detective Moon did not possess the authority to continue the detention and to demand appellant's driver's license. Once Detective Moon became aware that Ellison was not in the vehicle, his request for appellant's operator's license exceeded the scope of the investigatory stop. Detective Moon was not entitled to prolong the detention and engage in further investigation absent a reasonable suspicion of some other unlawful activity. See *Krum; Chatton; Berry; Myers; State v. Coates* (1990), 70 Ohio App.3d 1, 590 N.E.2d 359; *Fairborn v. Orrick* (1988), 49 Ohio App.3d 94, 550 N.E.2d 488. Thus, under the circumstances presented in the instant case, we conclude that the trial court erred by failing to grant appellant's motion to suppress evidence.

We note that the instant case is not a situation in which an officer knew, prior to the stop, that a vehicle was not being driven by the vehicle's registered owner or that a driver was operating a vehicle with a suspended license. See *State v. Graves* (July 14, 1993), Medina App. No. 2202, unreported, 1993 WL 261562, and *State v. Stroop* (Aug. 10, 1993), Highland App. No. 92CA824, unreported, 1993 WL 311784.

 Appellee's sole argument in support of Detective Moon's request for appellant's operator's license is that R.C. 4507.35 requires drivers to produce their operator's licenses upon an officer's request made at any time and for any reason. We disagree with appellee.

R.C. 4507.35 provides:

"The operator of a motor vehicle shall display his license, or furnish satisfactory proof that he has such license, upon demand of any peace officer or of any

person damaged or injured in any collision in which such licensee may be involved. When a demand is properly made and the operator has his license on or about his person, he shall not refuse to display said license. Failure to furnish satisfactory evidence that such person is licensed under sections 4507.01 to 4507.30 of the Revised Code, when such person does not have his license on or about his person shall be prima-facie evidence of his not having obtained such license."

This statute permits an officer to demand an operator's license when the officer possesses specific and articulable facts amounting to a reasonable suspicion of criminal activity. See *Ironton v. Murnahan* (1987), 43 Ohio App.3d 91, 539 N.E.2d 649.[2] In *State v. Evans* (1993), 67 Ohio St.3d 405, 408, 618 N.E.2d 162, 166, the Ohio Supreme Court recognized that a police officer may request the driver of a *lawfully* stopped vehicle to display his license:

"Pursuant to R.C. 4507.35, police have the authority to request a driver of a *lawfully stopped motor vehicle* to display a driver's license or furnish satisfactory

---

**2.** We note that appellee asserts, pursuant to R.C. 4507.35, that the driver of an automobile must produce his operator's license upon request at any time, with or without a direct violation of the traffic laws. In support of its argument, appellee cites *State v. Gaylor* (July 16, 1982), Highland App. No. 449, unreported, 1982 WL 3479, in which we stated in dicta:

"Although we must affirm the judgment below, we note that under Ohio Revised Code Section 4507.35, the officer had authority to stop Appellant. The statute requires drivers of motor vehicles to produce their driver's license upon request at any time they get behind a steering wheel. A driver's license is a privilege granted by the state and subject to inspection at any time, with or without a direct violation of the traffic laws. In *Cuyahoga Falls v. Church* (1967), 10 O.[hio] App.2d 9 [39 O.O.2d 31], 225 N.E.2d 274, the Court held that establishment of a roadblock to check for driver's licenses does not amount to an illegal search and seizure."

At this juncture, we take this opportunity to comment on the *Gaylor* decision. For several reasons, we note that the portion of the *Gaylor* decision cited by appellant enjoys very limited precedential value.

First, we note that we wrote the passage quoted above as dicta. The parties to the *Gaylor* appeal did not challenge the officer's request for the suspect's operator's license and, thus, no R.C. 4507.35 issue was before the court. Second, we note that two members of the three-judge panel concurred only in the judgment in *Gaylor*, and did not concur in the opinion. Third, an unpublished opinion shall not be considered controlling authority in the judicial district in which it was decided except between the parties thereto. See S.Ct.R.Rep.Op. 2(G)(1). An unpublished opinion shall merely be considered persuasive authority in the judicial district in which the opinion was rendered. See S.Ct.R.Rep.Op. 2(G)(2). Finally, we note that the dicta in *Gaylor* is an inaccurate interpretation of R.C. 4507.35. We note that courts in this state and courts in other jurisdictions with statutory provisions similar to R.C. 4507.35 generally agree that police officers must possess a reasonable suspicion of criminal activity to stop and detain a driver and demand that the driver display his operator's license. See *Murnahan, supra; State v. Barrow* (1978), 60 Ohio App.2d 335, 14 O.O.3d 295, 397 N.E.2d 422 (asserted general inspection power may not be used as a pretext for investigating appellant's "suspicious" conduct); *Goode v. State* (1979), 41 Md.App. 623, 398 A.2d 801; *People v. Murray* (1989), 188 Ill.App.3d 488, 136 Ill.Dec. 233, 544 N.E.2d 1008. We note that R.C. 4507.35 has been interpreted to permit police officers to stop motorists on a systematic basis, such as roadblocks. *Barrow.*

proof that he or she has such license. The provision also states that '[f]ailure to furnish satisfactory evidence that such person is licensed under sections 4507.01 to 4507.30 of the Revised Code, when such person does not have his license on or about his person shall be prima-facie evidence of his not having obtained such license.'

"Violation of R.C. 4507.35 is currently punishable under R.C. 4507.99(F) as a misdemeanor of the first degree. Although an issuance of a citation for a minor misdemeanor is the general rule, R.C. 2935.26(A) explicitly authorizes the police officer to make an arrest under certain exceptional circumstances. One such circumstance, R.C. 2935.26(A)(2), occurs when the offender cannot or will not produce a satisfactory form of identification." (Emphasis added.)

Thus, when an officer stops a vehicle for a reason other than as part of a systematic policy, such as a roadblock, the officer must be able to justify the operator's license request by specific and articulable facts amounting to a reasonable suspicion of criminal activity.

We again note that in the case *sub judice*, Detective Moon had established that Ellison was not in the vehicle. Furthermore, Moon did not possess a reasonable and articulable suspicion that appellant or the vehicle's occupants were subject to seizure for violation of the law. Absent a roadblock or other systematic policy of stopping vehicles, R.C. 4507.35 does not grant an officer an independent basis to demand that motorists produce their licenses. This statutory provision permits an officer to demand an operator's license when the officer possesses specific and articulable facts amounting to a reasonable suspicion of criminal activity. *Murnahan, supra.* As we discussed above, Detective Moon did not have a reasonable suspicion of criminal activity justifying his request that appellant produce his operator's license.

Accordingly, based upon the foregoing reasons we sustain appellant's assignment of error and reverse the trial court's judgment.

*Judgment reversed.*

HARSHA, P.J., and STEPHENSON, J., concur.