# CITY OF AKRON

v.

## VOLFRE.

Akron Municipal Court, Ohio.

No. 95 CRB 11206.

Decided Dec. 11, 1995.

*Thomas DiCuado,* Chief Assistant City Prosecutor, for plaintiff.

*Michael A. Tramonte,* for defendant.

---

ELINORE MARSH STORMER, Judge.

This cause came to be heard on defendant's motion to suppress. This court held a hearing on the matter on November 21, 1995.

## FACTS

On November 2, 1995, Officer Jim McFarland and his partner were assigned to routine patrol of a neighborhood in Akron known to be an area of high drug activity. At approximately 9:20 p.m., the officers approached the intersection of Manchester Road and Blanche Road. They noticed the defendant's car parked on Blanche, one or two feet from Manchester. The officers witnessed defendant Joan Volfre walking rapidly from a nearby house. McFarland testified that he suspected that the defendant had just made a drug purchase because (1) the officers had passed the house three to four minutes earlier and did not see the car parked at the intersection, (2) the car was parked in an awkward manner since it was so close to Manchester Road, (3) the defendant was walking quickly from the house to her car, (4) the neighborhood was a known drug area, and (5) the defendant did not seem to "fit in" the area.

As the defendant drove away from the house, McFarland followed her. The officers noticed that defendant's rear license plate light was out and made a traffic stop. The officers had not observed any moving traffic violations. At the hearing on this motion, McFarland testified that his primary purpose in stopping the defendant was to investigate for drug activity, and that his decision to issue an equipment violation was incidental to his primary intent.

The officers stopped the defendant and McFarland approached the vehicle. His partner approached from the passenger side. McFarland asked the defendant for identification and engaged in general questioning regarding her presence in a known drug area. The defendant told him that she had just left work and was in the area to drop off rent money for her girlfriend's brother. McFarland checked the defendant's license and found it valid. He then explained to the defendant that he intended to issue an equipment violation for the license plate light. McFarland also told the defendant he thought she might be engaged in drug activity and asked for permission to search the vehicle.

When McFarland initially asked for permission to search the vehicle, the defendant said, "Sure." She turned off the vehicle, but then stated to McFarland, "I don't like this," and "I haven't done anything." McFarland testified that the defendant appeared nervous. At no time did McFarland tell the defendant that she could refuse consent to the search. After a series of exchanges between McFarland and the defendant, the defendant abruptly opened her car door, stepped out of the vehicle, and told McFarland it was OK to conduct the search.

McFarland and the defendant stepped to the rear of the vehicle in order for the officers to conduct a *Terry* frisk. McFarland then searched the area of the car immediately accessible to the defendant. He noticed the defendant's purse sitting on the passenger seat. He removed the purse from the vehicle and placed in on the car's roof. When asked "What's in the purse?" the defendant replied that it contained a one-ounce bag of marijuana. Defendant removed the bag of marijuana and a pipe. Officer McFarland then looked through the purse and found an envelope, which contained a small amount of cocaine. The defendant was arrested for felony drug abuse/cocaine, among other things. Pursuant to defendant's status as a first time offender and the current drug-court protocol in the Akron Municipal Court, the charge was amended to attempted drug abuse, a first degree misdemeanor.

## ANALYSIS

Defendant filed a motion to suppress all evidence from the search of the vehicle. Citing *State v. Robinette* (1995), 73 Ohio St.3d 650, 653 N.E.2d 695, defendant argues that her consent to the search was invalid because she was never told "At this time you are free to go," or words of similar import, after the police issued the equipment violation.

In *Robinette*, police lawfully stopped the defendant for a traffic violation. After the detaining officer issued a traffic citation, he asked the defendant if he could search his vehicle. The defendant consented and the officer found a small amount of marijuana. In reversing the conviction for possession of marijuana, the Ohio Supreme Court held:

"1. When the motivation behind a police officer's continued detention of a person stopped for a traffic violation is not related to the purpose of the original, constitutional stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some separate illegal activity justifying an extension of the detention, the continued detention constitutes an illegal seizure.

"2. The right, guaranteed by the federal and Ohio Constitutions, to be secure in one's person and property requires that citizens stopped for traffic offenses be clearly informed by the detaining officer when they are free to go after a valid detention, before an officer attempts to engage in a consensual interrogation. Any attempt at consensual interrogation must be proceeded by the phrase *At this time you are legally free to go*,' or by words of similar import." (Emphasis added.) *Id.*, paragraphs one and two of the syllabus.

A traffic stop is a seizure of the person under the Fourth Amendment. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. To justify a limited warrantless detention during a traffic stop, the detaining officer must possess a reasonable and articulable suspicion that a violation of law has or may have been committed. *Id.* Whether a suspicion is reasonable depends upon the facts available to the officer at the time the stop was made. *State v. Freeman* (1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044. There is no automatic entitlement to conduct a detailed search of a vehicle when a person has been stopped for a traffic violation. *State v. Brown* (1992), 63 Ohio St.3d 349, 588 N.E.2d 113.

McFarland's original stop in this case was proper because he observed the defendant operating her motor vehicle with an equipment violation. See *State v. Anderson* (1995), 100 Ohio App.3d 688, 654 N.E.2d 1034 (pre-*Robinette* case; the defendant was stopped when the officer suspected that window tint was darker than allowed by law; subsequent search showed that driver possessed marijuana). Neither party disputes the propriety of the initial detention.

The further detention of defendant and subsequent search are a separate issue. This court must determine whether the continued detention was based on a reasonable suspicion of further illegal activity, or whether the continued detention was made to broaden the scope of the initial investigation and obtain consent for a search of the vehicle. In the absence of reasonable suspicion, the continued detention was invalid unless (1) the officers informed the defendant of her right to leave the scene, and (2) the defendant voluntarily consented to the continued detention and subsequent search. *Robinette, supra.*

Although Officer McFarland testified that the defendant appeared nervous when asked for consent to the search, common experience suggests that motor-

ists often become nervous when stopped for a traffic violation. This in itself is not sufficient to broaden the scope of a traffic stop. Officer McFarland's hunch— even though it turned out to be correct—was not a sufficient basis for continuing the detention. See *Columbus v. Holland* (1991), 76 Ohio App.3d 196, 199, 601 N.E.2d 190, 192–193 ("sixth sense" of arresting officer does not constitute reasonable suspicion). See, also, *Terry, supra.*

The prosecution places great weight on the fact that the officers conducted the search in a known drug area, as a basis for a reasonable suspicion of criminal activity. While this may be one consideration among others in a totality-of-the-circumstances analysis for evaluating the reasonableness of a police detention, it is not dispositive. Labelling a portion of the city as a known drug area does not give the police *carte blanche* to conduct an investigation that would otherwise be improper in another area of the city. The Fourth Amendment has equal application to all citizens. See Katz, Ohio Arrest, Search and Seizure (1995) 257–261. The other factors cited as a basis for McFarland's reasonable suspicion, for example, that defendant did not "fit in" to the area, are likewise insufficient to support the continued detention for drug activity. Apparently McFarland knew he could not meet the standard of reasonable and articulable suspicion. Significantly, he seems to have indicated that he followed the defendant to try to observe an equipment or traffic violation in order to justify a stop which would otherwise be invalid.

Since the officers did not have a legally sufficient reason to continue to detain the defendant after completing the investigation of the equipment violation, they were required to inform the defendant of her right to refuse consent to the search. *Robinette, supra.* Under *Robinette* the defendant's consent was not voluntary, and the continued detention was invalid.

The prosecution argues that *Robinette* does not apply because the officers' primary intent in stopping the defendant was to investigate suspected drug activity. The request for consent to search was related to the purpose of the original stop, and the equipment violation was incidental. This argument is not supported by the police officers' testimony.

McFarland had a hunch concerning drug activity and, apparently, in his own mind did not have sufficient specific and articulable facts to support his hunch. The rule in Ohio is that a stop cannot be used as a pretext to investigate a suspect's conduct absent any specific and articulable facts justifying the suspicion. See *State v. Barrow* (1978), 60 Ohio App.2d 335, 14 O.O.3d 295, 397 N.E.2d 422. The police cannot make a pretextual stop, conduct a warrantless search, and then use the evidence obtained from the search as the basis for the reasonable suspicion of criminal activity. The equipment violation justified a stop, but without more did not justify police inquiry into further criminal activity not

supported by specific and articulable facts known by the officers *prior* to the search. See *Terry, supra.*

This standard is not without precedent. For example, if the house which defendant briskly left had been the site of previous drug arrests or if the defendant had been previously arrested by this officer or if the defendant exhibited any signs of drug intoxication, then the police would have had sufficient information to proceed with a pure drug investigation without the need for a traffic stop.

## CONCLUSION

Therefore, pursuant to the Ohio Supreme Court holding in *State v. Robinette* (1995), 73 Ohio St.3d 650, 653 N.E.2d 695, and for the reasons stated herein, the motion to suppress is granted.

*So ordered.*

*Judgment accordingly.*