{¶ 1} This appeal arises from a no contest plea involving a misdemeanor in the County Court of Monroe County. Appellant David M. Cline was found driving with a dead deer in the back of his pickup truck, and he was charged with possession of an untagged deer. Appellant filed a motion to suppress, arguing that the sheriff's deputy who stopped him did not have probable cause to make the stop. The trial court overruled the motion to suppress, and Appellant later agreed to plead no contest to one count of possessing a deer out of season. Appellant now challenges the trial court's ruling on the motion to suppress. For the following reasons, the trial court ruling is affirmed.
 {¶ 2} On the evening of November 13, 2001, Appellant was driving his Chevy pickup truck on County Road 12 in Monroe County, Ohio. At approximately 11:51 p.m., Monroe County Sheriff's Deputy Mark Hayes began following Appellant. The deputy noticed a portable generator in the back of the truck. There had been two portable generators recently stolen from the same general area in which Appellant was driving his truck. The deputy followed Appellant for about five miles until he reached a more well-traveled intersection. (4/3/2002 Tr., p. 11.) The deputy then stopped Appellant's vehicle to examine the generator.
 {¶ 3} After stopping Appellant's truck, the deputy walked to the cargo area and saw a dead deer next to the generator. The deputy said to Appellant, "you got lucky and got one[.]" (4/3/2002 Tr., p. 14.) Appellant replied, "I invoke my right to remain silent[.]" (4/3/2002 Tr., p. 14.)
 {¶ 4} Deputy Hayes observed that the deer had no tag on it. He touched the deer and felt that it was warm and had been killed very recently. (4/3/2002 Tr., p. 14.) Deputy Hayes also noticed that there was a rifle on the front seat of the truck. Deputy Hayes was aware that it was bow hunting season, not rifle hunting season. (4/3/2002 Tr., p. 30.) The deputy took the rifle and decided to radio for assistance from a game warden and from his supervisor. Deputy Hayes also ran a check on the serial number of the portable generator in an attempt to see if it matched those that had been stolen. (4/3/2002 Tr., p. 15.) The game warden eventually arrived and charged Appellant with possession of an untagged deer in violation of violation of R.C. 1531.02 and Ohio Adm. Code 1501:31-15-11(Q).
 {¶ 5} On March 19, 2002, Appellant filed a Motion to Dismiss and Motion to Suppress. Appellant alleged that the state did not have probable cause to stop or search his truck.
 {¶ 6} The court held a suppression hearing on April 3, 2002. The only witness at the hearing was Deputy Hayes. The court denied the motion on May 1, 2002. A jury trial was set for June 11, 2002.
 {¶ 7} On June 5, 2002, Appellant agreed to plead no contest to one count of possessing a deer in a closed season in violation of R.C. §1531.02, a fourth degree misdemeanor. See R.C. 1531.99(A). The court fined Appellant $250, ordered $400 in restitution to the Ohio Department of Natural Resources, and imposed a twenty-day jail sentence with ten days suspended.
 {¶ 8} On July 1, 2002, Appellant filed this timely appeal.
 {¶ 9} This appeal involves a dispute over the trial court's decision to deny a motion to suppress. The standard of review of a denial of a motion to suppress is limited to determining whether the trial court's findings are supported by competent, credible evidence. State v.Winand (1996), 116 Ohio App.3d 286, 288, 688 N.E.2d 9. This is the appropriate standard of review because, "[i]n a hearing on a motion to suppress evidence, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." State v. Venham (1994), 96 Ohio App.3d 649,653, 645 N.E.2d 831. After accepting those facts as true, this Court must independently determine as a matter of law whether the trial court met the applicable legal standard. State v. Williams (1993), 86 Ohio App.3d 37,41, 619 N.E.2d 1141.
 {¶ 10} Appellant's first assignment of error states:
 {¶ 11} "The Trial Court Committed Prejudicial Error In Concluding That There Was A Reasonable Articulable Suspicion That The Defendant Was Engaged In Criminal Activity Justifying A Stop Of His Vehicle."
 {¶ 12} Appellant correctly states that, under the Fourth Amendment, a police officer must have a reasonable and articulable suspicion criminal activity is or has occurred before making a traffic stop. See Delaware v. Prouse (1979), 440 U.S. 648, 99 S.Ct. 1391,59 L.Ed.2d 660. Appellant believes that Deputy Hayes did not give a reasonable explanation for making the traffic stop. Appellant argues that vague suspicions or hunches do not provide legal justifications for making a traffic stop.
 {¶ 13} Appellant cites State v. Fincher (1991), 76 Ohio App.3d 721,603 N.E.2d 329, in support. Fincher involved a defendant who walked up to a car that was stopped in a high drug trafficking area. The defendant saw a police officer and walked away. The police chased the defendant and saw him drop a bottle containing crack cocaine. The police later searched him and found a pipe containing crack cocaine.
 {¶ 14} Fincher held that, "[t]he mere fact that one is associating with or conversing with known drug users is not enough to warrant an inference of possession or sale of drugs." Id. at 724. Fincher
acknowledged that the propriety of a investigatory stop is viewed in the light of the totality of the circumstances. Id. at 725, citing State v.Bobo (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus. Fincher raised other factors that may support the reasonableness of a stop, such as the time of day, the experience and training of the officer, and whether the location has a reputation for crime. Id. at 725. The Fincher court found it significant that the stop took place in the middle of the afternoon rather than late at night. Id.Fincher ultimately held that the suspicions of the police were too vague to justify an investigatory stop. Id. at 726.
 {¶ 15} Appellant also cites State v. Barrow (1978),60 Ohio App.2d 335, 14 O.O.3d 295, 397 N.E.2d 422. In Barrow, the defendant was stopped shortly after midnight after police observed him waiting in his car in an area known as a dumping ground for stolen cars. The defendant was talking to some people near his car, and one of them called out, "that is the cops." Id. at 335. The defendant soon drove away and the police followed and stopped him. After the stop, police asked the defendant to get out of the car, and as he did they saw that he had been sitting on a revolver. He was charged with carrying a concealed weapon.
 {¶ 16} The Barrow court noted the following facts as particularly significant: the defendant was not actively violating any laws and the police knew that the defendant's car was not a stolen car. Id. at 336. TheBarrow court concluded that the facts were too ambiguous to justify the initial stop. Id. at 337.
 {¶ 17} Appellant cites other cases with similarly ambiguous reasons supporting the investigative stops. In State v. Rhude (1993),91 Ohio App.3d 623, 632 N.E.2d 1391, the police stopped the defendant for pulling his car in and out of two driveways in the early morning hours in an area known for frequent burglaries. One of the driveways was the driveway to the defendant's own home. In State v. Brown (1996),116 Ohio App.3d 477, 688 N.E.2d 568, this Court reviewed the reasonableness of a stop that occurred in the early morning hours outside of a trucking business that had been the victim of numerous recent robberies. Brown noted that the defendant was not observed violating any traffic laws, did not appear to be in distress, and there was no other evidence that any criminal activity was about to take place. Rhude andBrown both held that the evidence was insufficient to justify the traffic stops.
 {¶ 18} Appellee does not present any significant counter-arguments, other than to state that the totality of circumstances in this case shows a reasonable justification for the traffic stop.
 {¶ 19} This instant case is not quite analogous to those cited by Appellant. In the matter before us, there were two recent thefts of portable generators in the general area of Appellant's stop. One occurred on November 10, 2001, and the other on November 13, 2001. Appellant was also stopped on November 13, 2001. Deputy Hayes testified that he stopped Appellant's vehicle to check the serial number of the portable generator to see if it matched one of the stolen generators. This qualifies as a reasonable means to identify a possibly stolen generator. We also note that the generator was plainly visible from the rear of the truck. Appellant believes that this explanation was a pretext because the police reports of the two stolen generators did not list serial numbers. Deputy Hayes did not know this at the time of the stop, because he was not directly involved with the investigations of the stolen generators. Appellant's argument also presumes that the owners of the generators could not have later reported the serial numbers after the initial police reports were made. In fact, both of the police reports state that the owners would be calling in with the serial numbers if the owners could find these numbers. (4/3/2001 Tr., State's Exh. 3, 4.)
 {¶ 20} Appellant next argues that there was no report of any generator stolen by someone using a Chevy pickup truck. Appellant claims that the police should have been looking for a car with its trunk open, because this type of vehicle was described in one of the police reports of the stolen generators. This is not a persuasive argument. A portable generator is, by definition, portable and can be moved. If the stolen generators could fit in the trunk of a car, they could fit in the back of pickup truck. Simply because there was a reference to a car with its trunk open included in the police report (4/3/2001 Tr., State's Exh. 3), there is no reason to conclude that the police were actively seeking a specific vehicle in relation to the thefts and could look at no others.
 {¶ 21} Based on the record before us, the totality of the circumstances appears to justify the traffic stop. Appellant's first assignment of error is hereby overruled.
 {¶ 22} Appellant's second assignment of error asserts:
 {¶ 23} "The Trial Court's Decision Is Contrary To The Fourth Amendment Guarantee Preventing Unreasonable Search And Seizure By Authorizing A Search Of Defendant's Vehicle After The Investigating Officer HAs Determined That The Original Basis For His Articulable Suspision [sic] Is Unfounded."
 {¶ 24} Without citing any cases or other authority, Appellant argues that Deputy Hayes should not have moved the deer around to see if it had been shot. Appellant believes that this was an unreasonable search because the initial reason for the stop had nothing to do with the deer. Appellant claims that it is not unlawful to have a deer in one's possession. Appellant's basic premise is incorrect, because it is generally illegal to possess any wild animal, including a deer, in the State of Ohio. R.C. 1531.02. There are also very detailed regulations on tagging and otherwise labeling a dead deer, whether it was killed during hunting season or killed in an automobile accident. See, e.g., Ohio Adm. Code 1501:31-15-11(Q); R.C. 1533.121.
 {¶ 25} At any rate, Appellant was charged with having an untagged deer. Deputy Hayes was fairly certain he was confronted with a violation when he noticed that the deer had no tag. The fact that he further examined the deer to see if there was a gunshot wound is irrelevant to the charge that was brought against Appellant. Only evidence that is actually derived from an illegal search, the so-called "fruit of the poisonous tree," is subject to the exclusionary rule. Wong Sun v. UnitedStates (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. The "fruit of the poisonous tree" doctrine only operates to exclude derivative evidence discovered as a result of a constitutional violation. Id. at 484. The alleged constitutional violation, here, occurred after Deputy Hayes had already observed the untagged deer. Thus, the evidence of the untagged deer in Appellant's truck would not be subject to the exclusionary rule.
 {¶ 26} Furthermore, motor vehicles are always subject to warrantless searches when an officer has probable cause to believe that a vehicle contains evidence of a crime. Michigan v. Thomas (1982),458 U.S. 259, 102 S.Ct. 3079, 73 L.Ed.2d 750; Chambers v. Maroney
(1970), 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419; Carroll v. UnitedStates (1925), 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543. Once Deputy Hayes saw the untagged deer, even without seeing the rifle on the front seat, he had probable cause to further investigate how the deer had died. The existence of the rifle in plain view on the front seat only increased the probability that criminal activity had taken place. Under the plain view doctrine, an officer may seize an item without a warrant if the initial intrusion leading to the item's discovery was lawful and it was immediately apparent that the item was incriminating. Coolidge v.New Hampshire (1971), 403 U.S. 443, 466, 91 S.Ct. 2022, 29 L.Ed.2d 564.
 {¶ 27} Finally, Deputy Hayes testified that Appellant gave him permission to search the truck: "[a]t one point, I did ask Dave if he would mind if I looked in his truck, go through his truck, he said, yeah, he had nothing to hide." (4/3/2002 Tr., p. 17.)
 {¶ 28} Appellant has not provided any persuasive reasons for suppressing any of the evidence in this case as being the fruit of an illegal search, and his second assignment of error must be overruled.
 {¶ 29} In conclusion, the trial court correctly found that Deputy Hayes had a reasonable basis for stopping Appellant's truck and that any limited search of Appellant's vehicle was permitted under the rules governing warrantless searches and because Appellant gave the deputy permission to search the truck. Because we must overrule both of Appellant's assignments of error, we hereby affirm the judgment of the trial court in full.
Judgment affirmed.
Vukovich and DeGenaro, J., concur.