{¶ 15} While I concur in the outcome and with the majority's reasoning, I would additionally find a genuine issue of material fact as to whether Officer Ashenhurst's behavior in initially running appellant's license plate, which under these circumstances may have violated the Fourth Amendment, was within the exception to qualified immunity established in R.C.2744.03(A)(6)(b).
 {¶ 16} The undisputed evidence demonstrates Officer Ashenhurst had no legal basis for running appellant's license plate:
Q. [Appellant's Counsel]: What caused you to select this vehicle to run their license plates?
A. It was directly in front of me.
Q. Purely random; —
A. Correct.
Q. — is that fair?
A. (Witness nodded affirmatively.)
* * *
Q. Was she doing anything out of the ordinary in her driving before you pulled her over?
A. No.
Q. You did not see her commit any traffic offenses before you pulled her over, did you?
A. I don't believe so.
(Ashenhurst Depo. at 8, 19.)
 {¶ 17} In Terry v. Ohio (1968), 392 U.S. 1, the United States Supreme Court first announced the Fourth Amendment to the United States Constitution is not offended when a police officer, based upon his "reasonable suspicion" that criminal activity is or may be occurring, stops a suspect for questioning. The Ohio Constitution is not violated by this conduct, termed an "investigatory stop" regardless of the fact the police officer lacks probable cause to arrest the suspect. See State v. Bobo
(1988), 37 Ohio St.3d 177; State v. Chatton (1984),11 Ohio St.3d 59; State v. Freeman (1980), 64 Ohio St.2d 291.
 {¶ 18} To warrant an investigatory stop, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." State v. Venham (1994),96 Ohio App.3d 649, 654. Determination of the propriety of the stop must be viewed under the totality of the circumstances. Bobo,
at paragraph one of the syllabus.
 {¶ 19} An investigatory stop "must be temporary and last no longer than is necessary to effectuate the purpose of the stop."Florida v. Royer (1983), 460 U.S. 491, 500. "If during the initial detention * * * the officer ascertained reasonably articulable facts giving rise to a suspicion of criminal activity, the officer may then further detain and implement a more in-depth investigation of the individual." State v.Robinette (1997), 80 Ohio St.3d 234, 241.
"Police have inherent authority to follow certain investigative procedures as a matter of course following a lawful traffic stop if the officer's suspicions of criminal activity have not been dispelled. Among these are a request to see a motorist's driver's license, registration, or vehicle identification number (VIN). * * * However, if the suspicions that triggered the initial stop are dispelled and there has been no violation of the law, then the officer has no authority to demand the driver's license, registration papers, or to check the VIN."
Venham, at 656, quoting State v. Krum (Sept. 1, 1993), Montgomery App. No. 13668.
 {¶ 20} As such, an investigatory stop which is prolonged and extends beyond the scope of the initial detention must be supported by a reasonable suspicion the suspect is engaged in another criminal activity. Id. Absent an "articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law,stopping an automobile and detaining the driver in order tocheck his driver's license and the registration of the automobileare unreasonable under the Fourth Amendment." (Emphasis added.)State v. Gullett (1992), 78 Ohio App.3d 138, 144, quotingDelaware v. Prouse (1979), 440 U.S. 648, 663. Instead, the driver must be allowed to drive away if, after discussion with the driver, a reasonable police officer would have been satisfied there was no unlawful activity. State v. Myers (1990),63 Ohio App.3d 765, 771.
 {¶ 21} By his own admission, Officer Ashenhurst did not have a reasonable or articulable suspicion of criminal activity at the time he ran appellant's license plate. Instead, he admitted randomly running checks on license plates as part of his daily routine. This routine, without a reasonable or articulable suspicion of criminal activity, does not comport with the requirements of the Fourth Amendment and constitutes an illegal search and seizure.
 {¶ 22} Therefore, because the undisputed evidence demonstrates Officer Ashenhurst did not have a reasonable or articulable suspicion of criminal activity, a genuine issue of material fact is raised as to whether his behavior in running appellant's license plate falls within the qualified immunity exception in R.C. 2744.03(A)(6)(b).
 {¶ 23} Additionally, I concur with the statement in Judge Sadler's concurrence that "the facts of this and virtually every case in which qualified immunity is raised merit individualized evaluation."