DECISION AND JUDGMENT ENTRY
Jeshua Justice appeals his convictions for driving under the influence of alcohol ("DUI") and obstructing official business. He asserts that the County Court in Pike County erred by overruling his motion to suppress because the Waverly Police Department ("WPD") did not have probable cause to stop him. We disagree because the officer stopped Justice based upon a reasonable articulable suspicion that Justice was about to commit a crime. Justice also asserts that the WPD did not have probable cause to arrest him for DUI. We agree because the officer did not observe any indicia that Justice was "under the influence," only that he had been drinking. Justice also asserts that his convictions for DUI and obstructing official business are against the manifest weight of the evidence. We agree that his conviction for obstructing official business is against the manifest weight of the evidence, because the refusal to act in response to the request of a police officer does not constitute an act that hampers or impedes a public official in the performance of lawful duties. Whether Justice's conviction for DUI is against the manifest weight of the evidence is moot because we determined that the arrest was not supported by probable cause. Accordingly, we reverse the judgment of the trial court.
 I.
Two women reported to the WPD that Justice attempted to rape one of them. After giving their statements to WPD officers, including Patrolman Danny Krystan, they remained at the police station with the dispatcher. Later that day, the dispatcher radioed Krystan because the man who allegedly attempted the rape was circling the police station in a white four-door Corsica and the two women inside the police station were scared. The dispatcher was concerned because there were no police officers in the station. Krystan located the white four-door Corsica and determined that it was registered to Emma Justice. As Krystan activated his patrol-car's headlights, Justice pulled his car over to the side of the road. Krystan approached the Corsica and Justice immediately demanded to know why he was pulled over. While he explained that he was concerned that Justice was circling the station, Krystan noticed Justice's glossy eyes and a very strong odor of an alcoholic beverage on [Justice's] breath." Upon Krystan's request, Justice produced his driver's license. Captain Long of the WPD then arrived at the scene and spoke briefly with Justice. According to Krystan, Justice was very abusive" to Captain Long and refused to get out his car when he was asked. At this point, Krystan arrested Justice for persistent disorderly conduct, driving without a valid license and driving under the influence. At Justice's trial Krystan testified that after the arrest, Justice was sluggish and exhibited poor motor skills.
Once they were at the police station, Patrolman Scott Evans offered Justice a breathalyzer test and told Justice not to put anything in his mouth. While they were waiting for the test to be done, Justice put a piece of chewing gum in his mouth and refused to spit it out. Evans interpreted Justice's actions as a refusal to take the test.
Krystan then transported Justice to the Pike County Sheriff's Office, where Deputy Rob Anderson was on duty. Anderson's duties included booking prisoners as they arrived. Anderson took custody of Justice and attempted to gather the information necessary for the booking process. Justice replied that he didn't have to do anything and refused to answer Anderson's questions. The required booking process includes fingerprinting, photographing, and gathering personal information about the prisoner. Anderson testified that Justice verbally refused to cooperate in any of these procedures. Justice admitted at trial that he "froze-up" during the booking process and "just didn't respond" to the officers' requests and orders.
Justice filed a motion to suppress, arguing that Krystan did not have probable cause to stop him or arrest him for DUI. The trial court overruled his motion. After a trial to the court, the trial court found him not guilty of driving without a license and persistent disorderly conduct and guilty of DUI and obstructing official business.
Justice now appeals, asserting the following assignments of error:
 I. THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION TO SUPPRESS BASED ON THE GROUNDS OF LACK OF PROBABLE CAUSE TO STOP.
 II. THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION TO SUPPRESS BASED ON THE GROUNDS OF LACK OF PROBABLE CAUSE TO ARREST.
 III. THE TRIAL COURT ERRED IN FINDING DEFENDANT GUILTY OF DRIVING UNDER THE INFLUENCE OF ALCOHOL AND/OR DRUGS OF ABUSE IN THAT SUCH FINDING WAS CONTRARY TO THE GREATER WEIGHT OF THE EVIDENCE.
 IV. THE TRIAL COURT ERRED IN FINDING THE DEFENDANT GUILTY OF OBSTRUCTING OFFICIAL BUSINESS IN THAT SUCH FINDING WAS CONTRARY TO THE GREATER WEIGHT OF THE EVIDENCE.
 II.
In his first assignment of error, Justice argues that the trial court erred by overruling his motion to suppress because Krystan did not have probable cause to stop him.
The investigative stop exception to the Fourth Amendment warrant requirement allows a police officer to conduct a brief investigative stop if the officer possesses "reasonable suspicion." Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889. Thus, Krystan did not need probable cause to stop Justice, as Justice argues. Rather, in determining the propriety of the stop, we focus on whether Krystan had the requisite "reasonable suspicion."
The reasonable suspicion must be based upon specific articulable facts, and rational inferences from those facts, warranting the belief that criminal behavior has occurred, is occurring or is imminent. United States v. Brignoni-Ponce (1978),422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607; Terry, supra; Statev. Andrews (1991), 57 Ohio St.3d 86; State v. Venham (1994),96 Ohio App.3d 649, 654. To justify an investigative stop, the officer must be able to articulate specific facts that would warrant a person of reasonable caution in the belief that the person stopped has committed, is committing or is about to commit a crime. Whren v. United States (1996), 517 U.S. 806,116 S.Ct. 1769, 135 L.Ed.2d 89; Delaware v. Prouse (1979), 440 U.S. 648,662, 99 S.Ct. 1391, 1400, 59 L.Ed.2d 660; Terry, supra. We must review the propriety of an investigative stop in light of the totality of the circumstances. State v. Bobo (1988),37 Ohio St.3d 177.
In a motion to suppress, the trial court assumes the role of trier of fact, and as such, is in the best position to resolve questions of fact and evaluate witness credibility. See, e.g.,State v. Mills (1992), 62 Ohio St.3d 357, citing State v. Fanning
(1982), 1 Ohio St.3d 19, 20; see, also, State v. Williams (1993),86 Ohio App.3d 37, 41. Accordingly, in our review, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger (1993),86 Ohio App.3d 592, 594. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. Ornelas v. United States (1996), 517 U.S. 690,134 L.Ed.2d 911, 116 S.Ct. 1657; State v. Klein (1991),73 Ohio App.3d 486, 488; Williams, supra; Guysinger,supra.
Officer Krystan testified that he stopped Justice based upon the following facts: (1) Justice, who had been accused of attempted rape, was circling the police station where the alleged victim and witness were present; and (2) the dispatcher was concerned because no police officers were in the station if Justice would enter the station; and (3) Justice's behavior of circling the station scared the alleged victim and witness.
Thus, at the hearing, Krystan articulated specific facts on which he based his investigative stop. These facts are sufficient to warrant a person of reasonable caution in the belief that Justice was about to commit a crime. Specifically, the facts support the inference that Justice was attempting to intimidate the alleged victim and witness inside the station. Viewing the stop in light of the totality of the circumstances surrounding the stop, we find that Krystan possessed the requisite reasonable suspicion to stop Justice. Therefore, we overrule his first assignment of error.
 III.
In his second assignment of error, Justice argues that Krystan did not have probable cause to arrest him for DUI in violation of R.C. 4119.19(A)(1).
In order to determine whether an officer possessed probable cause to arrest for a violation of R.C. 4119.19(A)(1), a trial court must evaluate whether, at the moment of the arrest, the totality of the facts and circumstances within the arresting officer's knowledge and of which he or she had reasonably trustworthy information, was sufficient to warrant a prudent person to believe that the suspect was guilty of driving under the influence. Huber v. O'Neill (1981), 66 Ohio St.2d 28, 30;State v. McCaig (1988), 51 Ohio App.3d 94. See, also, Beck v.Ohio (1964), 379 U.S. 89, 91, 13 L.Ed.2d 142, 85 S.Ct. 223. Having a drink and then driving does not always equal a violation of R.C. 4511.19(A)(1). State v. Hughart (Feb. 23, 1990), Gallia App. No. 88CA21; State v. Finch (1985), 24 Ohio App.3d 38. Rather, there must be indicia of impaired driving or impaired driving ability.[1] Id.; see, also Logan v. Randolph (May 10, 1999) Hocking App. No. 98CA18, unreported. A reviewing court determines as a matter of law, without deferring to the trial court's conclusions, whether the supported facts meet the totality of circumstances standard set forth in Huber and McCaig.State v. Klein (1991), 73 Ohio App.3d 486, 488.
At the suppression hearing Officer Krystan testified that he based his arrest on the following indicators: (1) Justice had a strong odor of alcohol on his breath; (2) Justice had glossy, abnormally shiny eyes; and (3) Justice was defensive and verbally abusive. Krystan testified that he did not ask Justice to perform field sobriety tests because of Justice's belligerent and abusive attitude. Krystan testified at Justice's trial that Justice exhibited poor motor skills and was sluggish after the arrest, but never testified that he observed such behavior prior to the arrest.
While a driver's refusal to take field sobriety tests may be an indicia of being "under the influence," see State v. Terry (June 6, 1997), Montgomery App. No. 16066, unreported, Justice never refused the tests since Krystan never asked him to take the tests.
Because Krystan did not observe any indicia of impaired driving or impaired driving ability, he did not have probable cause to arrest appellant for a violation of R.C. 4511.19(A)(1). SeeState v. Cooper (1997), 120 Ohio App.3d 416 (no probable cause when officer sees individual sleeping in car in private parking lot a three o'clock in the morning and simply detected odor of alcohol); Finch, supra (no probable cause to arrest for DUI when officer detected strong odor of alcohol on defendant, bloodshot eyes, flushed face and slurred speech without any erratic driving or field sobriety tests); Hughart, supra (no probable cause when officer arrested defendant without evidence of unsafe or erratic driving and did not conduct field sobriety test). Therefore, we find that the trial court erred when it denied Justice's motion to suppress. Accordingly, we sustain Justice's second assignment of error.
 IV.
In his third and fourth assignments of error, Justice asserts that his convictions for DUI and obstructing official business are against the manifest weight of the evidence.
 A.
In reviewing a judgment challenged for being against the manifest weight of the evidence, the reviewing court "will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." Statev. Eskridge (1988), 38 Ohio St.3d 56, paragraph two of the syllabus. In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted. State v. Garrow (1995), 103 Ohio App.3d 368,370-71.
 B.
In his third assignment of error, Justice asserts that his conviction for DUI is against the manifest weight of the evidence. Because we have determined that his arrest was not supported by probable cause, this argument is moot and we decline to address it. See App.R. 12(A)(1)(c).
 C.
In his fourth assignment of error, Justice argues that his conviction for obstructing official business is against the manifest weight of the evidence. He asserts that failure to respond to a police officer's requests does not constitute obstructing official business because doing nothing is not an "act." R.C. 2921.31 provides in part:
 (A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within his official capacity, shall do any act which hampers or impedes a public official in the performance of his lawful duties. * * *
Other courts have held, and we agree, that one cannot be guilty of obstructing official business by doing nothing because the text of R.C. 2921.31 specifically requires the offender to act. See State v. McCrone (1989), 63 Ohio App.3d 831; Hamilton v. Hamm
(1986) 33 Ohio App.3d 175; Columbus v. Michel (1978),55 Ohio App.2d 46. Refusal to be fingerprinted and refusal to answer questions are not "acts." State v. Collins
(1993), 88 Ohio App.3d 291; State v. Muldrow
(M.C. 1983) 10 Ohio Misc.2d 11. But, if a person also takes affirmative actions to hamper or impede the police from finding out his or her identity, the defendant may be guilty of obstructing official business. Collins, supra.
In this case, Justice took no affirmative actions to impede the police officers from taking his fingerprints or learning his true identity. The state argues that by "freezing up" when the officers attempted to take his fingerprints, Justice committed an act that hampered or impeded the officer's lawful duty of taking Justice's fingerprints and picture. The state takes Justice's testimony out of context. While Justice did testify that he "froze up," he clarified that he just "didn't do anything." The officers' testimony also indicated that they based the charge on Justice's refusal to act. The state did not offer any testimony that an affirmative act by Justice hampered or impeded the officers from taking Justice's fingerprints or picture. After examining the entire record, we find that there is not substantial evidence upon which we could reasonably conclude that the state proved beyond a reasonable doubt the element of obstructing official business that requires an "act." Accordingly, Justice's conviction for obstructing official business is against the manifest weight of the evidence. We sustain his fourth assignment of error.
 IV.
In conclusion, we overrule Justice's first assignment of error, sustain his second and fourth assignments of error, and decline to address his third assignment of error because it is moot. Accordingly, we reverse appellant's convictions and remand this case for proceedings consistent with our opinion.
JUDGMENT REVERSED AND CAUSE REMANDED.
[1] We note that probable cause for a DUI arrest for a violation of R.C. 4511.19(A)(2)-(4) (the per se provisions) need not have the same indicia of impaired driving ability or impaired driving as a violation of R.C. 4511.19(A)(1). See State v.Ousley (Sept. 20, 1999), Ross App. No. 99CA2476, unreported;State v. Downard (Dec. 19, 1997), Washington App. No. 97CA24, unreported.