OPINION
Appellant Jonathan Crowder appeals the decision of the Stark County Court of Common Pleas that denied his motion to suppress. The following facts give rise to this appeal. On July 24, 1999, at 2:45 a.m., Officer John Dittmore, of the Canton Police Department, stopped appellant for a red light violation. While Officer Dittmore prepared the traffic citation, he radioed for a K-9 unit to check appellant's vehicle for drugs. Officer Dittmore was suspicious that appellant may be involved in drug activity because he had been informed of recent drug activity occurring at a bar in the area where he stopped appellant. Officer Dittmore also received information about drug activity between Columbus and Canton and appellant was from Columbus driving a vehicle registered to someone else. Officer Marino and his K-9 partner, Buster, arrived in less than a minute from Officer Dittmore's call. While Officer Dittmore continued to prepare the traffic citation, Buster searched the exterior of appellant's vehicle. Buster indicated the presence of drugs near the gas cap of the vehicle. Officer Marino observed a white residue, but there was an insufficient amount to collect for evidentiary purposes. Based on Buster's positive response for drugs near the gas cap, Officer Marino permitted Buster to sniff the inside of appellant's vehicle. Buster made a second positive indication for drugs under the front driver's seat of the vehicle. When Officer Marino looked under the driver's seat, he discovered a gun. On July 30, 1999, the Stark County Grand Jury indicted appellant for one count of carrying a concealed weapon. Appellant entered a plea of not guilty on August 6, 1999. Appellant filed a motion to suppress on September 13, 1999. The trial court conducted an evidentiary hearing, on appellant's motion, on September 15, 1999. The trial court overruled appellant's motion on September 28, 1999. Thereafter, on October 6, 1999, appellant entered a plea of no contest. On November 10, 1999, the trial court sentenced appellant to a three year term of community control sanctions. Appellant timely filed a notice of appeal and sets forth the following assignment of error for our consideration.
 I. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS WHEN THE EVIDENCE WAS SEIZED PURSUANT TO A WARRANTLESS SEARCH OF HIS AUTOMOBILE DURING A MINOR MISDEMEANOR TRAFFIC STOP, AND WHEN THE SEARCH WAS BASED SOLELY ON A DRUG DOG ALERT SIGNAL THAT INCORRECTLY INDICATED CONTROLLED SUBSTANCES WERE IN THE CAR.
 I
In his sole assignment of error, appellant contends the search of his automobile was unconstitutional. We disagree. On appeal, appellant does not argue the trial court's findings of fact are against the manifest weight of the evidence. Nor does appellant allege the trial court failed to identify the law to be applied. Instead, appellant contends the trial court incorrectly decided the ultimate issue raised in the motion to suppress. When reviewing this type of a claim, as an appellate court, we must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93, 96; State v. Claytor (1993), 85 Ohio App.3d 623, 627; State v. Guysinger (1993), 86 Ohio App.3d 592, 594. It is based on this standard that we review appellant's sole assignment of error. Appellant does not challenge the initial stop of his vehicle for a traffic violation. However, appellant claims that the lawfulness of the detention ended once he was given a citation and his continued detention, while a K-9 unit could be brought to the scene, was unlawful. Appellant does concede that if a vehicle is lawfully detained, the exterior sniff by a trained narcotics dog, to detect the odor of narcotics, is not a search within the meaning of the Fourth Amendment to the United States Constitution. State v. Carlson (1995), 102 Ohio App.3d 585, 594. Thus, on appeal, appellant challenges the duration of the investigative stop. Appellant also claims there is insufficient evidence establishing the drug dog's training. A. Duration of Stop The scope and duration of the investigative stop must not exceed what is necessary to complete the purpose for which the initial stop was made. Florida v. Royer (1983), 460 U.S. 491, 500; State v. Robinette (1997), 80 Ohio St.3d 234, paragraph one of the syllabus. However, if the officer observes additional circumstances that give rise to a reasonable suspicion of some other illegal activity, the officer may detain the driver for as long as the new articulable and reasonable suspicion continues. State v. Venham (1994), 96 Ohio App.3d 649, 655. Finally, numerous courts, in the State of Ohio, have held that a person committing a minor misdemeanor traffic offense may be detained in order for the officer to conduct a dog sniff for drugs. State v. Bradford (July 8, 1998), Medina App. No. 2752-M, unreported; State v. Napier (May 27, 1998), Medina App. No. 2671-M, unreported; State v. Blednick (Nov. 5, 1997), Summit App. No. 18395, unreported; State v. Kennedy (Sept. 30, 1999), Ross App. No. 99CA2472, unreported; State v. Green (May 14, 1999), Wood App. No. WD-98-068, unreported; State v. Griffith (Aug. 10, 1998), Madison App. No. CA97-09-044, unreported; and State v. French (June 19, 1995), Preble App. No. CA94-10-026, unreported. With respect to the length of the duration, the record establishes that the entire stop lasted approximately ten minutes. Officer Dittmore testified that it usually takes him approximately ten minutes to issue a traffic citation. Tr. Suppression Hrng., Sept. 15, 1999, at 8. Officer Dittmore also testified that Officer Marino conducted the K-9 search, of the exterior and interior of the vehicle, while he was in the process of issuing the citation for the traffic violation. Id. Finally, Officer Dittmore testified that the K-9 search concluded within the ten minute time period it took him to issue the traffic citation. Id. Based on the above, we do not conclude the search of appellant's vehicle was unconstitutional based on the length of time appellant was detained. The stop only lasted approximately ten minutes. Further, because Buster indicated on the gas cap of appellant's vehicle, Officer Marino had a reasonable, articulable suspicion to search the interior of appellant's vehicle. We conclude Officers Dittmore and Marino only detained appellant for as long as they had a reasonable, articulable suspicion. B. Reliability of K-9 Unit Appellant next maintains Buster was insufficiently trained and not reliable. Appellant bases this argument on the fact that Buster had only completed the narcotics training two months prior to the stop. Further, of Buster's forty sniffs during this period, he only gave six indications for drugs. Of the six indications, drugs were found in only three cases. We find the testimony presented by Officer Marino established that Buster was sufficiently trained and reliable. Officer Marino testified that he and Buster had been partners since 1998. Officer Marino and Buster completed a basic patrol dog academy and graduated in July 1998. Id. at 24. Officer Marino and Buster also worked on the patrol division from July 1998 to March 1999 where they went through a police narcotics detector training course from March to May 1999. Id. During the eight-week course, Buster learned to sniff and locate cocaine and marijuana. Officer Marino also testified that Buster has located narcotics six times on the streets. Id. at 25. In the case sub judice, Buster first scratched at the gas cap of appellant's vehicle. Officer Marino did observe a white residue on the cap. Id. at 33. We find this indication by Buster gave Officer Marino reasonable, articulable suspicion to search the interior of appellant's vehicle. The fact that the search of the interior of the vehicle did not result in the recovery of drugs is irrelevant for purposes of determining whether the search was unconstitutional. Officer Marino explained, at the suppression hearing, why Buster may have indicated on the gas cap: * * * K-9's are trained to sniff and indicate on the presence of narcotics; they're not trained to indicate on any other, any other substances other than what they are trained for. He's — that's the only thing he'll scratch at is the presence of marijuana or cocaine.
* * *
They, will indicate on what is called residual odor where the narcotics were there and removed however there is a small enough amount that the dog can still smell it however it cannot be collected. Id. at 31-32.
Finally, appellant relies on the case of State v. Jones (Aug. 3, 1998), Ashland App. No. 97-COA-01240, unreported, in support of his argument that the odor of drugs alone does not constitute probable cause for a full search of a vehicle. The Jones case is distinguishable from the matter currently before the court because Jones dealt with a law enforcement official smelling marijuana as opposed to a trained drug dog. Based on the above, we conclude the facts of this case meet the appropriate legal standard. The trial court did not err when it denied appellant's motion to suppress.
For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
HOFFMAN, P.J., and READER, V. J., CONCUR.