This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, the City of Akron ("City"), appeals from the judgment of Akron Municipal Court which granted Defendant's, Tanisha S. Bowen, motion to suppress evidence. We affirm.
{¶ 2} On April 19, 2002, Defendant was charged with one count of carrying a concealed weapon, in violation of Akron City Code Section137.02. Defendant entered a plea of not guilty and a pre-trial conference was scheduled. On May 29, 2002, Defendant filed a motion to suppress evidence with a request for an evidentiary hearing. The trial court granted the motion on June 11, 2002. The City timely appealed raising one assignment of error for review.
 ASSIGNMENT OF ERROR
{¶ 3} "The trial court erred in sustaining [Defendant's] motion to suppress evidence as the spring knife was obtained through constitutionally permissible means when the officer searched the area under immediate control of [Defendant] for his own safety. This search did not violate [Defendant's] right against unreasonable searches and seizures guaranteed by both the Fourth Amendment of the United States and Article I[,] Section 14 of the Ohio Constitution."
{¶ 4} In its sole assignment of error, the City maintains that the trial court erred by granting Defendant's motion to suppress evidence. More specifically, the City alleges that a constitutionally permissible search was performed of the areas within Defendant's immediate control. We disagree.
{¶ 5} A trial court makes both factual and legal findings when ruling on a motion to suppress. State v. Jones, 9th Dist. No. 20810, 2002-Ohio-1109, at ¶ 9. Accordingly, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." State v. Hopfer
(1996), 112 Ohio App.3d 521, 548, quoting State v. Venham (1994),96 Ohio App.3d 649, 653. An appellate court, therefore, is bound to accept a trial court's factual findings that are supported by competent, credible evidence. State v. Searls (1997), 118 Ohio App.3d 739, 741;State v. Guysinger (1993), 86 Ohio App.3d 592, 594. However, the trial court's application of law to the factual findings is reviewed de novo on appeal. State v. Russell (1998), 127 Ohio App.3d 414, 416. See, also,Ornelas v. United States (1996), 517 U.S. 690, 699, 134 L.Ed.2d 911.
{¶ 6} The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons *** against unreasonable searches and seizures, shall not be violated[.]" Section 14, Article I of the Ohio Constitution also guarantees a similar right; "its protections are coextensive with its federal counterpart."State v. Kinney (1998), 83 Ohio St.3d 85, 87. Thus, the exclusion of evidence obtained in violation of these rights is a necessary element to ensure the constitutional guarantees against unlawful searches and seizures. State v. Finney, 9th Dist. No. 21180, 2003-Ohio-529, at ¶ 7, referencing State v. Jones (2000), 88 Ohio St.3d 430, 434; Mapp v.Ohio (1961), 367 U.S. 643, 655-56, 6 L.Ed.2d 1081.
{¶ 7} Accordingly, a police officer may conduct an investigative stop of an individual only when he has a reasonable suspicion, based on specific and articulable facts, that an individual is or has been engaged in criminal activity. Jones at ¶ 10, citing Terry v. Ohio (1968),392 U.S. 1, 19-20, 20 L.Ed.2d 889. See, also, State v. Fitzgerald, 9th Dist. No. 20866, 2002-Ohio-4523, at ¶ 21. Specifically, the police must "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." Terry, 392 U.S. at 21; State v. Andrews (1991),57 Ohio St.3d 86, 87-88.
{¶ 8} Reasonable suspicion is measured by an objective standard: "would the facts available to the officer at the moment of the seizure *** `warrant a man of reasonable caution in the belief' that the action taken was appropriate?" State v. Bobo (1988), 37 Ohio St.3d 177,178-79, quoting Terry, 392 U.S. at 21-22. See, also, Fitzgerald at ¶ 21. When determining whether a stop was proper, a court must consider the totality of the circumstances. State v. Anderson (1995),100 Ohio App.3d 688, 692; Bobo, 37 Ohio St.3d 177 at paragraph one of the syllabus. The circumstances surrounding the stop are to be viewed through the eyes of a reasonable and cautious police officer, guided by his experience and training. Bobo, 37 Ohio St.3d at 179, quoting UnitedStates v. Hall (C.A.D.C. 1976), 525 F.2d 857, 859. "Facts which might be given an innocent construction will support the decision to detain an individual momentarily for questioning, so long as one may rationally infer from the totality of the circumstances that the person may be involved in criminal activity." Jones at ¶ 21, citing United Statesv. Cortez (1981), 449 U.S. 411, 417-18, 66 L.Ed.2d 621.
{¶ 9} The typical Terry stop entails a brief detention sufficient for the police to ask questions pertaining to the suspicious circumstances. See State v. Jones (Dec. 3, 1999), 1st Dist. No. C-990125. However, an officer does not have authority to automatically conduct a search of a detainee when a valid stop has been initiated.State v. Kish (Nov. 5, 1999), 11th Dist. No. 98-L-148. See Terry,392 U.S. at 27. In order to conduct a pat-down search for weapons, an officer must have reason to believe that an individual is armed and dangerous.Terry, 392 U.S. at 27. "Where a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others." Bobo, 37 Ohio St.3d 177 at paragraph two of the syllabus. The court must look to see whether a reasonably prudent man in the circumstances would believe that his safety or that of others was in danger. Terry, 392 U.S. at 27. Reasonableness is not determined by "incohate and unparticularized suspicion[s]" but rather by "specific reasonable inferences" an officer is entitled to draw from the circumstances in light of his experiences. Id. This will enable an officer to pursue an investigation absent the fear of violence. Bobo,37 Ohio St.3d at 180. The limited search is not intended to provide the officer with an opportunity to discover evidence of a crime. Id.
{¶ 10} Consequently, we will analyze whether Officer Schismenos had a reasonable suspicion of criminal activity sufficient to support an investigatory stop and an element of risk to support a vehicular search to ensure officer safety.
{¶ 11} At the suppression hearing, Officer Donald Schismenos, of the Akron Police Department, testified for the City. Officer Schismenos is a patrolman in the Street Crimes Gang Unit and was participating in a stakeout the evening Defendant's vehicle was stopped. The stakeout targeted an apartment complex at 16 South Rhodes in the City of Akron, as the police had information of a possible robbery of a known drug dealer in the apartment. An hour into the stakeout, Officer Schismenos heard Defendant's vehicle "called out" over the radio by undercover officers. The report indicated that Defendant's vehicle was acting suspicious: the vehicle reportedly stopped in front of 16 South Rhodes, let someone out, and pulled into an adjacent parking lot. A short time later, the same individual who exited Defendant's car emerged from the apartment and re-entered the vehicle. Officer Schismenos indicated that the occupants of Defendant's vehicle "were conversing with another vehicle next to them" and then quickly pulled away and headed southbound on Rhodes.
{¶ 12} Officer Schismenos decided to stop the vehicle to "ascertain what they were doing at the apartment." He testified that the occupants' actions were "consistent with them going in and possible purchasing some type of drugs within the apartment. It was a quick letting out of the person and then coming back." He noted however, that the information he received from the undercover police officers did not indicate that the vehicle had been involved in, nor was it suspected of being involved in, any robberies. Officer Schismenos explained that the car was stopped roughly a block and a half away from the apartment complex to protect the operations of the undercover officers. When the vehicle was stopped, three females were inside. Identification was requested and Officer Schismenos inquired as to why they were at 16 South Rhodes that evening. He explained that he was "trying to ascertain if there was a legitimate business being there." Defendant, the driver of the vehicle, responded that she was picking up her sister. Officer Schismenos was not sure if Defendant's sister was present in the vehicle at the time of the stop.
{¶ 13} The Officer then explained that a concealed weapon was confiscated from the stopped vehicle. Officer Schismenos did not indicate that the occupants were requested to exit the vehicle in order to perform a search of the areas under their immediate control for officer safety. Rather, he testified that he opened Defendant's door and a spring-loaded knife, resembling a cigarette lighter, was found inside "the driver's door map pocket, right next to [Defendant's] left leg, within reach of her hand." Officer Schismenos further testified that "[he] couldn't see it unless [he] pulled the map pocket out a little bit and actually looked into it." Defendant admitted that the knife was hers and stated that she kept it after the lighter fuel ran out. Additionally, Officer Shismenos asserted that Defendant was not placed under arrest prior to the search of her vehicle. Her permission was not sought before the search was conducted.
{¶ 14} Upon review of the record in the instant case, we find the search to be outside the constitutional parameters. Although there was reasonable suspicion to conduct an investigatory stop of Defendant's vehicle, there was no reasonable suspicion, based on the totality of the circumstances, that Defendant was armed. See Terry, 392 U.S. at 27. While Officer Schismenos stated that Defendant's vehicle was stopped for suspicious activity, he also remarked that "[a]ll [he] knew is she could have been casing the place for suspected robbers *** [or] maybe conducting some type of drug traffic." Officer Schismenos did not relay any facts that would lead a reasonable individual to believe that his safety was jeopardized. Thus, the Officer was not entitled to initiate a protective search for the safety of himself and others. See Terry,392 U.S. at 27. Accordingly, the City's sole assignment of error is overruled.
{¶ 15} The City's sole assignment of error is overruled. The judgment of the Akron Municipal Court is affirmed.
WHITMORE, J. and BATCHELER, J. CONCUR.