This cause was heard upon the record in the trial court. Each error Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant-Appellant Troy L. Lawson has appealed from an order of the Cuyahoga Falls Municipal Court that denied his motion to suppress evidence and found him guilty of driving under the influence of alcohol. This Court affirms.
 I.
{¶ 2} On April 6, 2002, at approximately 12:10 a.m., Appellant entered a BP gas station in Cuyahoga Falls, Ohio. Mark Starcher, an attendant working at the gas station at that time, noticed that Appellant was staggering as he walked and that he was slow in opening his wallet and counting his money for the purchase of two cans of Fix-a-Flat tire sealant. Mr. Starcher also observed a pick-up truck with severely damaged passenger side tires parked in the gas station's parking lot.
{¶ 3} Based on his observations, Mr. Starcher formed a belief that Appellant was intoxicated and called police to report a possible individual under the influence of alcohol. Mr. Starcher identified himself, gave the address of the gas station, and described the pick-up truck. Officers Hawley and Shover[1] of the Cuyahoga Falls Police Department responded to the call, and found Appellant and the pick-up truck at the BP station.
{¶ 4} Appellant was arrested and charged with operating a motor vehicle while under the influence of alcohol, in violation of R.C.4511.19(A)(1). Appellant subsequently filed a motion to suppress the evidence seized against him, contending that the officers lacked reasonable suspicion that he was engaged in criminal activity. Appellant also filed a memorandum of supplemental authority. After a hearing on the matter, the trial court denied Appellant's motion to suppress, holding that the police officers did not stop Appellant, but merely approached him in the parking lot. Appellant subsequently filed a motion to reconsider the denial of his motion to suppress. The trial court never expressly ruled on the motion to reconsider, and we therefore presume that the court denied it. State ex rel. The V Cos. v. Marshall (1998),81 Ohio St.3d 467, 469.
{¶ 5} Appellant thereafter entered a plea of no contest and was found guilty of the offense of operating a motor vehicle while under the influence of alcohol. Appellant has timely appealed from the order denying his motion to suppress, asserting two assignments of error which we have consolidated to facilitate review.
 II. Assignment of Error Number One
{¶ 6} "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS BASED ON ITS CONCLUSION THAT APPELLANT NEVER WAS `SEIZED' BY THE POLICE."
 Assignment of Error Number Two
{¶ 7} "THE TRIAL COURT ERRED IN OVERRULING [APPELLANT'S] MOTION TO SUPPRESS BECAUSE THE POLICE OBTAINED EVIDENCE AGAINST HIM BY SEIZING HIM EVEN THOUGH THE POLICE LACKED REASONABLE, ARTICULABLE SUSPICION OF CRIMINAL ACTIVITY."
{¶ 8} An appellate court's review of a ruling on a motion to suppress evidence presents a mixed question of law and fact. State v.Long (1998), 127 Ohio App.3d 328, 332. "In a hearing on a motion to suppress evidence, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." State v. Hopfer (1996), 112 Ohio App.3d 521,548, appeal not allowed (1996), 77 Ohio St.3d 1488, quoting State v.Venham (1994), 96 Ohio App.3d 649, 653. Accordingly, "[a]n appellate court must review the trial court's findings of historical fact only for clear error, giving due weight to inferences drawn from those facts by the trial court. The trial court's legal conclusions, however, are afforded no deference, but are reviewed de novo." State v. Russell
(1998), 127 Ohio App.3d 414, 416, citing Ornelas v. United States
(1996), 517 U.S. 690, 698-699, 116 S.Ct. 1657, 134 L.Ed.2d 911.
{¶ 9} In his first assignment of error, Appellant has argued that the trial court erred in concluding that he was never seized by the police and that Officer Shover merely approached Appellant in the parking lot. In his second assignment of error, Appellant has contended that the officers conducted an unlawful investigatory stop because they lacked reasonable suspicion that he was engaged in criminal activity. According to Appellant, the trial court should have suppressed all evidence obtained as a result of the stop.
{¶ 10} The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" The exclusion of evidence obtained in violation of these provisions is an essential part of the Fourth Amendment. State v. Jones
(2000), 88 Ohio St.3d 430, 434; Mapp v. Ohio (1961), 367 U.S. 643,655-656, 81 S.Ct. 1684, 6 L.Ed.2d 1081.
{¶ 11} Although the Fourth Amendment guarantees individuals the right "to be secure in their persons" from unreasonable seizures, "not all personal intercourse between policemen and citizens involves `seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a `seizure' has occurred." Terry v. Ohio (1968),392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889, fn. 16.
{¶ 12} Consequently, consensual encounters between police and citizens do not implicate Fourth Amendment protections at all. Floridav. Royer (1983), 460 U.S. 491, 497-498, 103 S.Ct. 1319, 75 L.Ed.2d 229. "[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen[.]" Royer,460 U.S. at 497. Consensual encounters, therefore, are those "where the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away." State v. Taylor (1995), 106 Ohio App.3d 741, 747, citingUnited States v. Mendenhall (1980), 446 U.S. 544, 553, 100 S.Ct. 1870,64 L.Ed.2d 497.
{¶ 13} In Taylor, the court distinguished consensual encounters from seizures on the basis of whether "the police officer has by either physical force or show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter." Taylor,106 Ohio App.3d at 748; see, also, California v. Hodari D. (1991), 499 U.S. 621, 629,111 S.Ct. 1547, 113 L.Ed.2d 690 (holding that a seizure occurs where a law enforcement officer either applies physical force in restraining an individual, or exercises a "show of authority" with which the individual complies or submits). Indicia of a seizure, even where the person did not attempt to leave, include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled."Mendenhall, 446 U.S. at 554.
{¶ 14} At the suppression hearing, Officer Shover described the following sequence of events. Upon arriving at the gas station, the officer observed a pick-up truck that matched the description provided in the dispatch. Officer Shover stated that he also observed that the pick-up truck had severely damaged tires. Based on his experience and training in accident investigation, Officer Shover concluded that the vehicle must have struck something and then had been driven for a period of time.
{¶ 15} Officer Shover testified that he and Officer Hawley then entered the gas station and approached Mr. Starcher, the gas station attendant, who identified Appellant to the officers. Officer Shover stated that he waited until Appellant finished using the telephone, and then said: "Excuse me, sir." The officer testified that Appellant ignored the remark and continued to walk towards the exit. Officer Shover averred that he detected an odor of alcohol coming from Appellant as he walked by the officers. Officer Shover also testified that Appellant was walking in a heavy-footed manner.
{¶ 16} The officers followed Appellant out of the gas station and called out, this time in a louder tone of voice: "Excuse me, sir. We need to talk to you." Appellant turned around and had a conversation with the police officers, during which he admitted that the pick-up truck belonged to him and that he was driving it on the night in question. Officer Shover testified that there continued to be an odor of alcohol coming from Appellant and that, although Appellant was not swaying or staggering, he had glassy, bloodshot eyes and slightly slurred speech.
{¶ 17} Appellant then returned to the pick-up truck, followed by the police officers. Appellant came to be standing with his back against the truck and the police officers stood on either side of him, at a slight angle. Some time later, Appellant began walking towards the rear passenger-side tire, at which time Officer Shover told him to stop what he was doing. After Appellant refused to submit to field sobriety tests, the police officers placed Appellant under arrest for operating a motor vehicle under the influence of alcohol.
{¶ 18} We agree with the trial court that Appellant's first two encounters with the police officers, when Officer Shover attempted to attract his attention inside and subsequently outside the gas station, were consensual in nature. Inside the gas station, Officer Shover merely attempted to get Appellant's attention by saying "Excuse me, sir." The trial court found that it was unclear whether Appellant heard Officer Shover or even realized that the officer was speaking to him at that time. Outside the gas station, Officer Shover simply repeated the remark in a louder tone of voice to attract Appellant's attention. After Appellant engaged in conversation with the police officers, he turned around and freely walked back to his vehicle. Therefore, these encounters were consensual in nature and do not implicate Fourth Amendment protections.
{¶ 19} Following these consensual encounters, Officer Shover followed Appellant back to his pick-up truck, told him to stop working on his vehicle, and ordered him to stand near the front of the truck so the officer could talk to him. Assuming, arguendo, that this interaction amounted to a seizure of Appellant for Fourth Amendment purposes, Officer Shover had already made a number of observations sufficient to support a reasonable suspicion of illegal activity and to justify the further intrusion.
{¶ 20} A police officer may conduct an investigative stop where he has a reasonable suspicion, based on specific and articulable facts, that an individual is or has been engaged in criminal activity. Terry v. Ohio
(1968), 392 U.S. 1, 19-24, 88 S.Ct. 1868, 20 L.Ed.2d 889; State v.Andrews (1991), 57 Ohio St.3d 86, 87, certiorari denied (1991),501 U.S. 1220, 111 S.Ct. 2833, 115 L.Ed.2d 1002. The police must "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." Terry, 392 U.S. at 21; see, also, State v. Bobo (1988),37 Ohio St.3d 177, 180-81, certiorari denied (1988), 488 U.S. 910,109 S.Ct. 264, 102 L.Ed.2d 252; Andrews, 57 Ohio St.3d at 87-88. A police officer's "reasonable suspicion" is measured by an objective standard: "would the facts available to the officer at the moment of the seizure *** `warrant a man of reasonable caution in the belief' that the action taken was appropriate?" Bobo, 37 Ohio St.3d at 178-179, quoting Terry,392 U.S. at 21-22.
{¶ 21} In the case at bar, Officer Shover testified that he smelled an odor of alcoholic beverage coming from Appellant immediately after Appellant walked by him inside the gas station. At the suppression hearing, Officer Shover characterized the odor as "strong" because he was able to smell it as soon as Appellant walked by. The officer stated that when he and Officer Hawley finally attracted Appellant's attention outside the gas station, Officer Shover continued to smell alcohol. Officer Shover also testified that he noted that Appellant had glassy, bloodshot eyes, that he was walking in a heavy-footed manner, and that there was a slight slur in his speech.[2] Further, during the conversation outside the gas station, Officer Shover asked Appellant whether the pick-up truck with severely damaged tires belonged to him and whether he had been driving it on the night in question. Appellant admitted to both of these facts.
{¶ 22} Finally, the tip that first brought Appellant to the officers' attention came from a reliable informant. Mr. Starcher not only identified himself to the police dispatcher, but was personally known by one of the officers who responded to the dispatch. Officer Shover testified at the suppression hearing that he knew Mr. Starcher from previous occasions, when he went to the gas station for coffee during his midnight shifts. In holding that a telephone tip can, by itself, satisfy the reasonable suspicion standard necessary to justify an investigative stop, the Ohio Supreme Court has stated that a telephone tip from a known or identified informant "may be highly reliable and, therefore, a strong showing as to the other indicia of reliability may be unnecessary[.]"Maumee v. Weisner (1999), 87 Ohio St.3d 295, 300, citing Illinois v.Gates (1983), 462 U.S. 213, 233-234, 103 S.Ct. 2317, 76 L.Ed.2d 527.
{¶ 23} Based on the foregoing, the observations by Officer Shover amounted to specific and articulable facts that, taken together with the rational inferences from those facts, reasonably warranted further investigation of, Appellant. At the time their encounter with Appellant rose to the level of an investigatory stop, the officers had reasonable suspicion to believe that Appellant had recently been engaged in criminal activity. The evidence against Appellant therefore was not obtained in violation of his constitutional rights. Appellant's assignments of error are without merit.
 III.
{¶ 24} Appellants assignments of error are overruled. The judgment of the trial court is affirmed.
CARR, P.J. and BATCHELDER, J. CONCUR.
[1] The record inconsistently refers to Officer Hawley's partner as Officer "Shover" and Officer "Shober."
[2] Appellant has pointed out that the reference to glassy, bloodshot eyes and slurred speech in Officer Shover's impaired driver report appears only after Appellant came to be standing by the pick-up truck. However, Officer Shover testified at the suppression hearing that he had observed a continued strong odor of alcoholic beverage, glassy bloodshot eyes, heavy foot, and slightly slurred speech when he first attracted Appellant's attention and engaged him in conversation outside the gas station.