This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant-Appellant David J. Reese has appealed from his convictions in the Medina Municipal Court for driving under the influence of alcohol, making an improper right turn, and driving with a non-functioning license plate light. This Court affirms.
 I {¶ 2} In October 2001, Officer Daniel Warner of the Medina Police Department conducted a traffic stop of Appellant's vehicle. During the stop, Officer Warner administered field sobriety tests to Appellant. Following the tests, the officer arrested Appellant for driving under the influence of alcohol. Officer Warner thereupon transported Appellant to the police station, and requested that Appellant take an alcohol breath test. Appellant refused to take the test.
 {¶ 3} Appellant was charged with operating a vehicle under the influence of alcohol ("DUI"), in violation of R.C. 4511.19(A)(1); making an improper right turn, in violation of Medina City Ordinance 331.10(a); and driving without a functioning license plate light, in violation of Medina City Ordinance 337.04(b). Appellant entered a plea of not guilty to all charges, and filed a motion to suppress evidence. In his motion, Appellant argued that Officer Warner lacked reasonable suspicion to believe that Appellant was engaged in criminal activity at the time he conducted the traffic stop, and any evidence obtained after the stop was acquired in violation of his constitutional rights. Appellant also contended that any evidence regarding the administration and results of the field sobriety tests should be deemed inadmissible, on the grounds that the tests were not administered in strict compliance with standardized methods and procedures.
 {¶ 4} Following a hearing, the trial court denied Appellant's motion to suppress. The case proceeded to trial before a jury on the DUI charge, and before the court on the improper turn and inoperative license plate light violations. Appellant was convicted of all three charges. The trial court sentenced Appellant to a fine of $1,000, a suspension of three years and assessment of six points to Appellant's driver's license, one year in jail with all but sixty days suspended, and two years probation. The trial court stayed execution of the sentence pending resolution of this appeal. Appellant has asserted two assignments of error, which we have rearranged to facilitate review.
 II Assignment of Error Number Two {¶ 5} "WHETHER THE COURT ERRED IN FINDING A REASONABLE AND ARTICULABLE SUSPICION TO JUSTIFY THE INITIAL DETENTION OF [APPELLANT] AND HIS VEHICLE[.]"
 {¶ 6} In his second assignment of error, Appellant has argued that the trial court erred in denying his motion to suppress all the evidence obtained during and subsequent to the traffic stop. Appellant has contended that Officer Warner did not have reasonable suspicion to believe that Appellant was engaged in criminal activity at the time he initiated the stop.
 {¶ 7} An appellate court's review of a trial court's ruling on a motion to suppress evidence presents a mixed question of law and fact. State v. Long (1998), 127 Ohio App.3d 328, 332. In a hearing on a motion to suppress, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." State v. Hopfer (1996), 112 Ohio App.3d 521,548, appeal not allowed (1996), 77 Ohio St.3d 1488, quoting State v. Venham (1994), 96 Ohio App.3d 649, 653. Accordingly, we accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592, 594. "The trial court's legal conclusions, however, are afforded no deference, but are reviewed de novo." State v. Russell (1998), 127 Ohio App.3d 414, 416, citing Ornelas v. United States (1996), 517 U.S. 690, 698-699,116 S.Ct. 1657, 134 L.Ed.2d 911.
 {¶ 8} In its order denying Appellant's motion to suppress, the trial court found that Medina City Police Officer Daniel Warner thought he may have observed Appellant's vehicle travel on the double yellow dividing line as it proceeded eastbound on Smith Road. The court found that the officer then followed Appellant, and witnessed the vehicle stop beyond the designated line at a traffic light, and cross a double yellow line into a northbound turn lane while making a very wide right turn. The court also found that the license plate on the automobile Appellant was operating was not illuminated by a light, even though it was after 2:00 a.m. and very dark. The court therefore concluded that "there was a reasonable and articulable suspicion adequate to justify the initial detention of [Appellant's] vehicle."
 {¶ 9} At the hearing on the motion, Officer Warner testified that his attention was first drawn to a brown Pontiac that "looked like it was on the yellow, the double yellow line on West Smith Street." The officer testified that he then followed the Pontiac, and observed its failure to comply with a red traffic light by stopping beyond the designated line at the Court street intersection. Officer Warner further testified that the rear license plate of the Pontiac "was unlit. There was a light, rear license plate light that was not operating." Finally, the officer testified that the vehicle made:
 {¶ 10} "[A]n extremely wide right turn. Instead of maintaining his lane and staying in the southbound lane, as traffic is required, the vehicle came across the double yellow line and actually proceeded southbound in the turning lane for northbound traffic[.]"
 {¶ 11} Kelly Reed, a friend of Appellant who followed behind the police car in her own automobile, also testified at the hearing. Ms. Reed stated that she could not remember whether Appellant stopped for the red light at Court Street, she did not see Appellant make the wide right turn described by Officer Warner, and she thought that Appellant's license plate light was working properly on the night in question.
 {¶ 12} Based on the testimony before the court at the suppression hearing, we conclude that the trial court's findings that Officer Warner saw Appellant make an improper turn and drive without a functioning license plate light are supported by competent, credible evidence. Where a traffic stop is based on a traffic violation that occurs in the officer's presence, the officer has probable cause to stop the vehicle. See Dayton v. Erickson (1996), 76 Ohio St.3d 3, 11.
 {¶ 13} "Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity." Id., at syllabus.
 {¶ 14} As the trial court properly found that Officer Warner witnessed Appellant violate two separate traffic laws by making an improper right turn and driving without a functioning license plate light, we must conclude that the officer had probable cause to stop Appellant's vehicle. Evidence obtained subsequent to the stop was not acquired in violation of Appellant's constitutional rights, and the trial court properly denied his motion to suppress on that basis. Appellant's second assignment of error is without merit.
 Assignment of Error Number One {¶ 15} "WHETHER THE COURT ERRED IN NOT PERMITTING DEFENSE COUNSEL TO INQUIRE INTO THE ARRESTING POLICE OFFICER'S COMPLIANCE, OR LACK THEREOF, OF STANDARDIZED FIELD SOBRIETY TESTING PROCEDURES UNDER STATE v. HOMAN (2000), 89 Ohio St.3d 421, TO DETERMINE PROBABLE CAUSE FOR ARREST AS WELL AS THE TESTS' VALIDITY, RELIABILITY, AND ADMISSIBILITY?"
 {¶ 16} In his first assignment of error, Appellant has contended that the trial court should have allowed counsel to inquire into whether Officer Warner strictly complied with standardized testing procedures for conducting field sobriety tests. Citing State v. Homan (2000),89 Ohio St.3d 421, Appellant has asserted that the tests were not conducted in strict compliance with standardized methods and procedures, and the results were therefore unreliable. According to Appellant, the trial court should have suppressed all evidence concerning his performance on the field sobriety tests for purposes of determining 1) whether probable cause existed to arrest him for DUI, and 2) his guilt or innocence at trial.
 {¶ 17} In Homan, the Ohio Supreme Court explained that "while field sobriety tests are a potentially effective means of identifying intoxicated drivers, these tests' reliability depends largely upon the care with which they are administered." Homan, 89 Ohio St.3d at 425. The court held: "In order for the results of a field sobriety test to serve as evidence of probable cause to arrest, the police must have administered the test in strict compliance with standardized testing procedures." Id., paragraph one of the syllabus. The court in Homan concluded that, although the results of field sobriety tests had to be excluded, the totality of the facts and circumstances supported the police officer's decision to arrest the appellant for DUI. Id. at 427.
 {¶ 18} In the case sub judice, Officer Daniel Warner testified at trial that he administered the one-legged stand and the walk and turn tests to Appellant. After thoroughly reviewing the record, we find that error, if any, in the admission of Officer Warner's testimony describing Appellant's performance on the one-legged stand and walk and turn tests was harmless. A reviewing court may overlook an error where the admissible evidence comprises "overwhelming" proof of a defendant's guilt. State v. Williams (1983), 6 Ohio St.3d 281, 290, certiorari denied (1983), 464 U.S. 1020, 104 S.Ct. 554, 78 L.Ed.2d 727. "Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal." State v. Brown (1992), 65 Ohio St.3d 483, 485.
 {¶ 19} Officer Warner testified that after he observed Appellant's vehicle travel across the center line, make an improper stop at a red light, and proceed southbound in the northbound lane of travel after turning, he activated his overhead lights to stop Appellant. The officer testified that when Appellant attempted to pull off the road, he drove both right side tires of his vehicle over a curb before coming to a stop. When he approached Appellant, the officer stated, he observed that Appellant's eyes were glassy and bloodshot and a strong odor of alcohol was coming from him. The officer testified that he then asked Appellant if he graduated from high school, and Appellant responded that he had his "GDE," before correcting himself and saying "GED." The officer stated that he then asked Appellant to recite the alphabet from the letter K through W, and Appellant "started at H and just rambled on various letters, didn't actually recite them in order[.]" The officer testified that Appellant's speech was "slurred" and "thick-tongued," and he had difficulty pronouncing words correctly. Officer Warner stated that he then asked Appellant to exit his vehicle, and Appellant's balance was unsteady and he almost fell when he got out of the car. The officer averred: "Even outside the vehicle I noticed a very strong odor of alcohol coming from [Appellant]."
 {¶ 20} Detective Michael Wesner also testified at the trial. The detective stated that he was in another patrol car on the night of Appellant's arrest, and he also observed Appellant's erratic driving. Detective Wesner stated that he was about to initiate a traffic stop of Appellant's vehicle when he saw that Officer Warner had already activated his overhead lights, and he then followed Officer Warner's patrol car and assisted with the arrest. According to the detective, Appellant had a "hard time standing up" as he exited his vehicle. The detective also testified that he heard Appellant say that he had been drinking at home, and went to pick up his friend from a bar. Detective Wesner stated that he transported Appellant to the police station in the back seat of his cruiser, and while he was driving he noticed a very strong odor of alcohol coming from Appellant. Finally, the detective testified that Appellant was very unsteady on his feet, and required assistance walking from the cruiser to the police station.
 {¶ 21} In light of the overwhelming evidence that Appellant was under the influence of alcohol, we find that any error in the trial court's failure to suppress evidence of Appellant's performance on the one-legged stand and walk and turn tests was harmless. Appellant's first assignment of error is not well taken.
 III {¶ 22} Appellant's assignments of error are overruled. The judgment of the trial court is affirmed.
SLABY, P.J. CONCURS; CARR, J. CONCURS IN JUDGMENT ONLY.