**[Cite as *State v. Beckett*, 2026-Ohio-697.]**

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | | |

| | |
|---|---|
| STATE OF OHIO | C.A. No. 25CA012219 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| ERNEST BECKETT | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. 22CR107559 |

DECISION AND JOURNAL ENTRY

Dated: March 2, 2026

CARR, Presiding Judge.

{¶1}     Appellant, Ernest Beckett, appeals the judgment of the Lorain County Court of Common Pleas.  This Court affirms in part, reverses in part, and remands for further proceedings.

I.

{¶2}     This matter arises out an incident that occurred on October 1, 2022, where Beckett fled from police during a traffic stop in Lorain.  Police stopped Beckett's vehicle soon thereafter and he was placed under arrest.

{¶3}     The Lorain County Grand Jury indicted Beckett on one count of failure to comply with an order or signal of a police officer with an attendant firearm specification, one count of having weapons while under disability, one count of tampering with evidence with an attendant firearm specification, one count of receiving stolen property with an attendant firearm specification, one count of carrying a concealed weapon, and one count of improperly handling a firearm in a motor vehicle.  Beckett pleaded not guilty to the charges at arraignment.

{¶4} Beckett filed a motion to suppress the evidence obtained by police during the incident. The trial court held a hearing and then subsequently issued a journal entry denying the motion to suppress. Thereafter, Beckett appeared for a change-of-plea hearing where he pleaded no contest to the charges in the indictment. The trial court found Beckett guilty. The trial court imposed an aggregate prison sentence of two and a half years.

{¶5} On appeal, Beckett raises two assignments of error.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS.

{¶6} In his first assignment of error, Beckett argues that the trial court erred in denying his motion to suppress. This Court disagrees.

{¶7} This Court's review of the trial court's ruling on the motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8. The trial court acts as the trier of fact during a suppression hearing and is best equipped to evaluate the credibility of witnesses and resolve questions of fact. *Id.*; *State v. Hopfer*, 112 Ohio App.3d 521, 548 (2d Dist. 1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653 (4th Dist. 1994). Consequently, this Court accepts a trial court's findings of fact if supported by competent, credible evidence. *Burnside* at ¶ 8. Once this Court has determined that the trial court's factual findings are supported by the evidence, we consider the trial court's legal conclusions de novo. *See id.* In other words, this Court then accepts the trial court's findings of fact as true and "must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist. 1997).

Background

{¶8}    In support of his motion to suppress, Beckett sought to suppress all of the evidence obtained by police on October 1, 2022, on the basis that police did not have a lawful basis to stop his vehicle or place him under arrest.

{¶9}    Officer Daniel Cole of the Lorain Police Department was the only witness to testify on behalf of the State at the suppression hearing.  Beckett's father and the mother of his children testified on behalf of the defense.

{¶10}   Based on the evidence presented at the suppression hearing, the trial court made the following factual findings in its journal entry denying the motion to suppress:

> On October 1, 2022, Officer Cole Daniel was on-duty as a city of Lorain police officer assigned to the Patrol Impact [Unit], tasked with enforcing laws against violent crimes, gun violence and illegal narcotics.  On this evening, Officer Daniel testified that he stopped [Beckett] as his license plate was not readable from fifty feet at night in violation of Lorain Ordinance 337.04.  After being asked for his identification and not being able to find it, [Beckett] put the vehicle back into drive and pulled away.  A pursuit ensued during which [O]fficer Daniel lost visual contact of [Beckett].  Once he came around a curve, he observed [Beckett] stopped and took him into custody.  Another officer discovered a firearm in a yard located in a place where [O]fficer Daniel did not have sight of [Beckett] during the pursuit. The located firearm was determined to be stolen.

{¶11}   Based on the foregoing findings, the trial court determined that Officer Daniel had a lawful basis to initiate the traffic stop of Beckett's vehicle based on his observations that Beckett's vehicle did not have sufficient rear license plate lighting in violation of  Lorain Cod. Ord. 337.04.  The trial court further determined that police had probable cause to place Beckett under arrest after Beckett fled during the traffic stop and failed to comply with the order of the police.  To the extent that Beckett argued that the initial traffic stop violated R.C. 4549.13, which requires markings on police vehicles being used for the primary purpose of enforcing traffic laws, the trial court concluded that the vehicle requirements were not applicable in this case because

Officer Daniel's primary assignment on the night of the incident was enforcing laws against violent crimes and illegal narcotics, not enforcing traffic laws.

Discussion

{¶12} In support of his first assignment of error, Beckett argues that the trial court's finding that Officer Daniel observed a traffic violation was not supported by competent, credible evidence. Beckett contends that Officer Daniels' testimony "was inconsistent, to say the least" with respect to whether a license plate light issue existed that amounted to a breach of Lorain Cod. Ord. 337.04(b). Beckett further notes that the defense presented two witnesses who indicated that Beckett's plate light was in order.

{¶13} As noted above, Officer Daniel was the only witness to testify on behalf of the State at the suppression hearing. Officer Daniel testified that, in his capacity as a Lorain police officer, he serves on the Patrol Impact Unit, which is tasked with enforcing laws against violent crimes, gun violence, and illegal narcotics. While Officer Daniel sometimes enforces traffic laws, that is not the main purpose of his unit. Officer Daniel explained that he often initiates traffic stops that are connected to a criminal investigation and unrelated to traffic offenses. On the evening of October 1, 2022, Officer Daniel was assigned to the Patrol Impact Unit. After hearing the aforementioned testimony, the trial court took a brief recess. The trial court then made a ruling that a violation of R.C. 4549.13 had not occurred because Officer Daniel's primary purpose on the night of the incident was not enforcing traffic laws.

{¶14} Thereafter, Officer Daniel testified that he was positioned in the Tower Boulevard area of Lorain on the night in question. The Patrol Impact Unit was conducting surveillance on Rag's Liquor Store. While positioned at that location, Officer Daniel observed a pickup truck

being driven by Beckett, and noticed that the license plate was not readable from 50-feet away in violation of Lorain Cod. Ord. 337.04.

{¶15} Lorain Cod. Ord. 337.04, which pertains to taillights and the illumination of rear license plates, states as follows

> (a) Every motor vehicle, trailer, semitrailer, pole trailer or vehicle which is being drawn at the end of a train of vehicles shall be equipped with at least one tail light mounted on the rear which, when lighted, shall emit a red light visible from a distance of 500 feet to the rear, provided that in the case of a train of vehicles only the tail light on the rear-most vehicle need be visible from the distance specified.

> (b) Either a taillight or a separate light shall be so constructed and placed as to illuminate with a white light the rear registration plate, when such registration plate is required, and render it legible from a distance of fifty feet to the rear. Any taillight, together with any separate light for illuminating the rear registration plate, shall be so wired as to be lighted whenever the headlights or auxiliary driving lights are lighted, except where separate lighting systems are provided for trailers for the purpose of illuminating such registration plate.

{¶16} Officer Daniel initiated the stop of Beckett's vehicle. When Officer Daniel made contact with Beckett, Beckett began reaching around the inside of the vehicle. Officer Daniel asked Beckett if there was a weapon in the vehicle. Beckett responded in the negative and further stated that he did not have identification. In the midst of the traffic stop, Beckett put the pickup truck in drive and fled the scene. After Beckett fled the traffic stop, Officer Daniel pursued him in his vehicle. Officer Daniel lost sight of Beckett after several turns but another officer was able to stop Beckett's vehicle. At that point, Beckett was taken into custody. Police located a firearm in a yard that Beckett had passed while attempting to evade Officer Daniel. Dispatch advised that the firearm was listed as stolen in the LEADS system.

{¶17} On cross-examination, Officer Daniel indicated that another officer involved in the surveillance operation indicated that there was "some sort of criminal activity" associated with a pickup truck that was leaving the liquor store. Officer Daniel testified that while he was not

necessarily planning to stop the pickup truck, he took an interest in the vehicle after being told that criminal activity might be taking place. Officer Daniel indicated that when he was more than 50 feet away from the vehicle, he was not able to read the rear license plate. Officer Daniel further explained, "I wasn't able to observe the license plate until I was right behind [his] vehicle and my headlights illuminated the license plate." Upon getting a closer look at the pickup truck, Officer Daniel realized that while Beckett's lights were technically functioning, "they weren't illuminated to where the license plate was visible from 50 feet." When pressed, Officer Daniel stated that he did not know exactly how close he was when he was able to read the license plate, but he knew it was closer than 50 feet.

{¶18} Two witnesses testified on behalf of Beckett at the suppression hearing. Beckett's father testified that he received Beckett's vehicle after it was released from the impound lot. Beckett's father testified that the license plate lights were functioning properly at that time. The mother of Beckett's children testified that she had an opportunity to observe Beckett's vehicle within ten days after it was released from the impound lot. The mother of Beckett's children stated that the license plate lights were functional at that time and, further, that she was confident that Beckett had not had any work done on the vehicle in the interim. The mother of Beckett's children also identified a photograph that she took showing the lights in functional condition.

{¶19} Under the circumstances here, Beckett cannot prevail on his assignment of error. While Beckett focuses on the first stop, the transcript makes clear that Officer Daniel provided ample testimony that he observed Beckett commit a traffic violation. The trial court found this testimony to be credible and this Court will not substitute its judgment for that of the trial court regarding the weight given to the testimony of a particular witness. *State v. Darr*, 2018-Ohio-2548, ¶ 15 (9th Dist.). Notably, even assuming arguendo that the first stop was unlawful, Beckett's

decision to flee during the initial traffic stop created an independent basis for police to place him under arrest during the second stop. *See United States v. Castillo*, 2000 WL 1800481, *6 (6th Cir. Nov. 28, 2000). Beckett does not dispute that he fled from the initial traffic stop. A driver's actions while fleeing a traffic stop can support a finding of probable cause to place the driver under arrest, regardless of the basis for the initial stop. *State v. Allison*, 2025-Ohio-1360, ¶ 14, fn 3 (5th Dist.). Further, the driver's conduct while feeling cannot be considered "fruit of the poisonous tree" when nothing pertaining to the initial stop tainted the officers' subsequent observations. *Id*. It follows that Beckett's challenge to the trial court's suppression ruling is without merit.

{¶20} The first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN ACCEPTING APPELLANT'S PLEA WHEN IT FAILED TO COMPLY WITH CRIM.R. 11.

{¶21} In his second assignment of error, Beckett contends that the trial court violated the dictates of Crim.R. 11(C)(2) at the plea hearing when it failed to address the effect of his no contest plea and the maximum penalties associated with each offense.

{¶22} A plea must be made knowingly, intelligently, and voluntarily in order to be valid. *State v. Clark*, 2008-Ohio-3748, ¶ 25. In Ohio, the procedure for properly accepting a plea of guilty or no contest to felony charges is set forth in Crim.R. 11(C). Crim.R. 11(C)(2) provides as follows:

> In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally either in-person or by remote contemporaneous video in conformity with Crim.R. 43(A) and doing all of the following:

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶23} The Supreme Court of Ohio has observed that "[w]hen a trial court fails to explain the constitutional rights that a defendant waives by pleading guilty or no contest, we presume that the plea was entered involuntarily and unknowingly, and no showing of prejudice is required." *State v. Dangler*, 2020-Ohio-2765, ¶ 14, citing *Clark* at ¶ 31. "But when a trial court fails to fully cover other 'nonconstitutional' aspects of the plea colloquy, a defendant must affirmatively show prejudice to invalidate a plea." *Dangler* at ¶ 14, citing *State v. Veney*, 2008-Ohio-5200, ¶ 17. The *Dangler* court noted "one additional exception to the prejudice requirement: a trial court's *complete* failure to comply with a portion of Crim.R. 11(C) eliminates the defendant's burden to show prejudice. (Emphasis in original.) *Dangler* at ¶ 15, citing *State v. Sarkozy*, 2008-Ohio-509, ¶ 22.

{¶24} In order to facilitate "a fairly straightforward inquiry[,]" the *Dangler* court set forth a series of questions:

Properly understood, the questions to be answered are simply: (1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?

*Dangler* at ¶ 17.

Discussion

**{¶25}** In support of his second assignment of error, Beckett argues that his pleas must be vacated because the trial court completely failed to address the effect of his no contest plea as required by Crim.R. 11(C)(2)(b). Beckett further contends that the trial court disregarded the requirements of Crim.R. 11(C)(2)(a) by failing to mention that he was statutorily required to serve consecutive sentences under R.C. 2921.331(D), and also failing to address the sentences associated with the firearm specifications.

**{¶26}** After initially pleading not guilty, Beckett appeared for the change-of-plea hearing and expressed a desire to plead no contest "to the indictment." Defense counsel specified that "we would stipulate to a finding of guilt[] [and] waive any reading of facts and circumstances." The State requested an opportunity to place the facts on the record prior to the trial court making a finding of guilt.

**{¶27}** A review of the transcript reveals that while the trial court proceeded to engage in a colloquy where it informed Beckett of his constitutional rights pursuant to Crim.R. 11(C)(2)(c), the trial court did not adequately discuss the maximum penalties involved pursuant to Crim.R. 11(C)(2)(a), nor did the trial court discuss the effect of a no contest plea pursuant to Crim.R. 11(C)(2)(b). In regard to Crim.R. 11(C)(2)(a), the trial court noted the maximum prison sentence and fine associated with each underlying offense contained in the indictment. Notably, however, with respect to the charge of failure to comply with the order or signal of a police officer in violation of R.C 2921.331(B), the trial court neglected to mention that Beckett was required to serve the prison term for that offense consecutive to any other prison term imposed upon him pursuant to R.C. 2921.331(D). The trial court also failed to discuss the penalties associated with the firearm specifications contained in counts one, three, and four of the indictment. Furthermore,

with respect to Crim.R. 11(C)(2)(b), the trial court failed to discuss the effect of Beckett's no contest plea at the hearing, other than to state in passing that the court could proceed to judgment and sentencing upon accepting the plea.[1]

{¶28}  At the conclusion of the plea colloquy, the trial court allowed the State to make a statement of facts regarding the events that transpired on the evening of October 1, 2022.  The matter then proceeded to sentencing, where the trial court imposed a term of incarceration on each offense in the indictment.  The trial court further imposed a one-year term of incarceration for the firearm specifications contained in counts one, three, and four.  The trial court then noted that all of the counts would run concurrently, "except I believe for the failure to comply [contained in count one], it has to run consecutive."  In sum, after ordering that the sentences for counts two through six to be served concurrently, the trial court imposed a nine-month prison term on the failure to comply charge along with a one-year prison term on the attendant firearm specification, and then ordered the sentence on count one to be served consecutively to the sentences imposed on counts two through six, for an aggregate sentence of two years and six months.

{¶29}  In light of the facts here, we are compelled to sustain Beckett's second assignment of error.  At the plea hearing, the trial court made no mention of the mandatory consecutive sentence requirement in relation to the failure to comply charge as set forth in R.C. 2921.331(D), nor did the trial court address the mandatory sentences associated with the firearm specifications. The State does not contest that the trial court failed to inform Beckett of the mandatory consecutive

---

[1] While this case did not involve a plea agreement, Beckett signed a waiver of rights form. The generic language of the form pertains to guilty pleas.  In the portion of the form dealing with the waiver of constitutional rights, it appears that defense counsel made a handwritten modification to reflect that, in this case, Beckett was pleading no contest.  Furthermore, in the portion of the form outlining Beckett's potential maximum sentence, there is no mention of the consecutive sentence requirement set forth in  R.C. 2921.331(D).

nature of his sentences. Furthermore, the record makes clear that the trial court made no attempt to address the effect of Beckett's no contest pleas at the plea hearing, in violation of Crim.R. 11(C)(2)(b). As these failures on the part of the trial court amount to a *complete* failure to comply with multiple portions of Crim.R. 11, a prejudice analysis is unnecessary in order to warrant the vacation of Beckett's pleas.

{¶30} To the extent that the State argues that this Court should only vacate those pleas for counts that carried mandatory consecutive time in light of our decision in *State v. Tancak*, 2022-Ohio-880 (9th Dist.), we are not persuaded. *Tancak* involved a scenario where the offender pleaded guilty to an eight-count indictment. *Id*. at ¶ 1, 4. While this Court vacated the offender's plea to failure to comply with the order or signal of a police officer on the basis that the trial court failed to inform him of the mandatory consecutive nature of his sentence, we declined to vacate the offender's pleas to the remaining offenses on the basis that he had not suffered prejudice. *Id*. at ¶ 13, 21. Here, in addition to the trial court's failure to discuss the mandatory consecutive nature of the sentences for certain offenses and specifications, the trial court also failed to discuss the impact of Beckett's no contest pleas- an error germane to all of the counts in the indictment. Accordingly, we decline to apply *Tancak* here.

{¶31} Beckett's second assignment of error is sustained.

### III.

{¶32} Beckett's first assignment of error is overruled. Beckett's second assignment of error is sustained. The judgment of the Lorain County Court of Common Pleas is affirmed in part, reversed in part, and remanded for further proceedings consistent with this decision.

Judgment affirmed in part,
reversed in part,
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

DONNA J. CARR
FOR THE COURT

HENSAL, J.
SUTTON, J.
CONCUR.

APPEARANCES:

CATHERINE MEEHAN, Attorney at Law, for Appellant.

ANTHONY CILLO, Prosecuting Attorney, and SPENCER J. LUCKWITZ, Assistant Prosecuting Attorney, for Appellee.